In re Melissa **PARKER**, Debtor.

**Brattleboro Housing Authority,
Creditor–Appellant,**

**v.**

**Melissa Parker, Debtor–Appellee.**

**No. 2:01–CV–207.**

United States District Court,
D. Vermont.

Oct. 31, 2001.

Rebecca A. Rice, Cohen & Rice, Rutland, VT, for Brattleboro Housing Authority.

Geoffry F. Walsh, Vermont Legal Aid, Inc., Springfield, VT, for Melissa Anne Parker

## OPINION AND ORDER

SESSIONS, District Judge.

Creditor–Appellant Brattleboro Housing Authority ("BHA") appeals the decision of the United States Bankruptcy Court for the District of Vermont (Brown, J.) declining to grant it certain pre-bankruptcy petition attorney's fees and utility and repair charges as a condition to the assumption of a lease by Debtor–Appellee Melissa Parker ("Parker") under Chapter 13 of Title 11 U.S.C. ("Bankruptcy Code"). BHA argues that these fees and charges should have been included as a condition to assumption, pursuant to 11 U.S.C. § 365(b)(1)(B), to reimburse it for the "actual pecuniary loss" it incurred in bringing an ejectment action against Parker. Alternatively, BHA argues that the attorney's fees should have been included as a general unsecured claim against the bank-

ruptcy estate. For the reasons stated below, the Court affirms the Bankruptcy Court's decision.

## I. Background

Parker and BHA entered into a lease agreement in December 1998 for an apartment in the Moore Court public housing complex in Brattleboro, VT. BHA is a local public housing authority which receives funding from the U.S. Department of Housing and Urban Development ("HUD") for the operation of low income rental housing in Brattleboro. During her residency in Moore Court, Parker has been a participant in the public housing program.

Beginning in the summer of 1999 Parker began to fall behind in her monthly rent payments to BHA. BHA brought an ejectment action and obtained a judgment against Parker in Windham Superior Court to collect the back-rent and recover possession of the apartment. *Brattleboro Hous. Auth. v. Parker, ("Parker I")*, No. S194–5–99 Wmc (Vt.Sup.Ct. Sept. 20, 1999). However, Parker redeemed her right to continue possession, pursuant to Vt. Stat. Ann. tit. 12, § 4773, by paying the past due rent, court costs, and interest before BHA's judgment became final.

Approximately one year later, Parker again fell behind on her rent payments.

In June 2000 BHA commenced another ejectment action against her in Windham Superior Court. On June 14, 2000 the Superior Court entered an order pursuant to Vt. Stat. Ann. tit. 12, § 4853a requiring Parker to pay the future monthly rent installments to the Court during the pendency of the ejectment action. This order provided that "if the Defendant fails to pay rent into Court in the amount and on the dates ordered, the Plaintiff shall be entitled to judgment for immediate possession and the Court shall forthwith issue a Writ of Possession." *Brattleboro Hous. Auth. v. Parker, ("Parker II")*, No. 231–6–00 Wmcv (Vt.Sup.Ct. Jan. 14, 2000) (Order of Approval of Rent Escrow).

■ On August 4, 2000 after Parker missed the monthly installment due on August 1, the clerk of the Superior Court issued an *ex parte* writ of possession pursuant to Vt. Stat. Ann. tit. 12, § 4853a(h).[1] However, no judicial determination that BHA was entitled to possession was made through a judgment for possession or any monetary amount using the procedures set out in V.R. Civ. P. 58 and 79(a).[2]

■ On August 10, 2000 before the writ of possession was executed, Parker filed a petition for relief under Chapter 7 of the Bankruptcy Code. This action triggered an automatic stay of the ejectment proceed-

---

1. § 4853a(h) provides that:

   If the tenant fails to pay rent into court in the amount and on the dates ordered by the court, the landlord shall be entitled to judgment for immediate possession of the premises. The court shall forthwith issue a writ of possession directing the sheriff of the county in which the property or a portion thereof is located to serve the writ upon the defendant....

   Vt. Stat. Ann. tit. 12, § 4853a(h) (Lexis Supp. 2000).

2. V.R. Civ. P. 58 requires that "upon a decision by the court granting or denying relief the clerk ... shall forthwith prepare the judg-

ment ... The Presiding Judge shall promptly approve and sign the judgment, and the clerk shall thereupon enter it. A judgment is effective only when entered as provided in Rule 79(a)." V.R. Civ. P. 79(a) details, *inter alia,* the manner in which the clerk must enter judgments into the civil docket. In this case while BHA may have been "entitled to a judgment of possession" it never received one. The writ of possession itself did not constitute a judgment of possession. It was not signed by a judge or docketed as a judgment and in no way indicated on its face that it was a judgment of any kind.

ings. 11 U.S.C.A. § 362(a)(3)(West 1993). Parker converted her Chapter 7 case to a Chapter 13 case on October 2, 2000 and filed her Chapter 13 plan a few weeks later. At this time Parker also filed a motion to assume her lease with BHA pursuant to 11 U.S.C. § 365(a).

Parker's Chapter 13 plan ("Plan")[3] proposes to cure her rent default by making monthly payments to the Chapter 13 Trustee. These payments will cover both the rent arrearage and the pre-petition court costs associated with the 2000 ejectment action brought by BHA. This amount is $784 in rent arrearage, $204.25 in court costs, and $76 in interest. The Plan also provides that Parker will make direct monthly payments to BHA for all future (post-petition) rent. General unsecured creditors will receive partial payments.

■ On September 1, 2000 prior to the conversion to Chapter 13, BHA filed for relief from the bankruptcy stay in order to recover possession of Parker's apartment. It continued to request this relief after the conversion.[4] BHA also objected to Parker's motion to assume the lease and opposed confirmation of the Plan. Specifically, BHA argued that Parker no longer had a lease to assume in bankruptcy because the Superior Court had issued a writ of possession, causing the lease to expire. Under 11 U.S.C. § 365(a) only an unexpired lease may be assumed in bankruptcy.

BHA also argued that the payment of rent arrearage and court costs would not cure Parker's default by compensating BHA for its "actual pecuniary loss" as required under 11 U.S.C. § 365(b)(1)(B). BHA argued that Parker must also reimburse it for a number of other costs: (1) $1,391.50 in attorney's fees incurred in the previous 1999 ejectment action, plus $236.90 in interest on those fees, (2) $168.00 in unpaid excess utilities charges, (3) $310.96 for repair of damages to the apartment, (4) and $932.00 in attorney's fees incurred during the 2000 ejectment action. It argued that payment of these additional costs should be a condition of assumption. By the time of the March 29, 2001 hearing on the Plan and BHA's request for relief from the stay, BHA was also seeking compensation for $1,450.75 in attorney's fees it had incurred post-petition in seeking relief from the stay and in opposing the Plan and lease assumption.

On April 24, 2001 the Bankruptcy Court issued a Memorandum of Decision granting Parker's motion to assume the lease and denying BHA's motion for relief from the stay. *In re Parker*, No. 00–10906 (Bankr.D.Vt. Apr. 24, 2001) (Mem. of Decision Grant'g Mot. to Assume Residential Lease, Fixing Costs of Assumption, Addressing Objection to Landlord's Att'ys Fees, and Den. Relief from Stay) (hereinafter *"Mem. of Decision"*). As to BHA's first argument, the Bankruptcy Court found that the lease had not expired because Parker retained her right to redeem under Vermont law, Vt. Stat. Ann. tit. 12,

---

**3.** Parker's original Chapter 13 plan has been amended twice. The first amended plan, dated March 29, 2001 included an increase in rental arrearage from Parker's initial $651 estimate to $784. The second amended plan, filed April 26, 2001, reflects the changes in classification of claims required by the April 24, 2001 Memorandum of Decision, discussed below. This second amended plan was formally confirmed by the Bankruptcy Court on August 7, 2001.

**4.** Parker again failed to pay her rent in January, February, and March 2001, prompting BHA to seek relief from the stay in January. In response, Parker agreed to make up the missed payments by having increased payments sent directly to BHA from her monthly welfare grant.

§ 4773, since the writ of possession had not been executed. *Mem. of Decision,* slip op. at 4–5. BHA does not challenge this ruling on appeal.

As to BHA's second argument, the Bankruptcy Court conditioned Parker's assumption of the lease on payment of the pre-petition rent arrearage and court costs only. *Id.* at 8–9. The Bankruptcy Court also limited BHA's unsecured claim in the estate to the $1,391.50 in attorney's fees awarded to BHA in the 1999 ejectment action and the pre-petition utility and repair charges. *Id.*

In its appeal, BHA challenges two aspects of the Bankruptcy Court's decision. First, BHA argues that the Bankruptcy Court erred in failing to include the $932.00 in pre-bankruptcy attorney's fees from the 2000 ejectment action, as well as the utility and repair charges,[5] as a condition to the assumption of the lease. Alternatively, BHA argues that these attorney's fees should have been classified, at the very least, as general unsecured claims against the bankruptcy estate.

## II. Jurisdiction and Standard of Review

■ This Court has jurisdiction over BHA's appeal pursuant to 28 U.S.C. § 158(a)(1). Section 158(a)(1) grants jurisdiction to the district court over appeals from final judgments, orders, and decrees of bankruptcy judges in "core proceedings." 28 U.S.C.A. § 158(a)(1)(West Supp.

2001). The instant appeal involves the Bankruptcy Court's order regarding assumption of a lease by the debtor and the allowance of an unsecured creditor's claim, both of which are core proceedings arising under 28 U.S.C. § 157(b)(2)(B),(M)(West 1993), and final orders subject to appeal, *In re Shangra–La,* 167 F.3d 843 (4th Cir. 1999).

■ On appeal, a district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013. A district court reviews a bankruptcy court's conclusions of law under a de novo standard of review. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir.1990). In contrast, a bankruptcy court's findings of fact will not be set aside unless they are clearly erroneous. Fed. R. Bankr.P. 8013; *In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990). Because this appeal involves review of the Bankruptcy Court's legal conclusions only, the Court will apply the de novo standard of review.

## III. Discussion

### A. The 2000 Pre–Petition Attorney's Fees and the Utility and Repair Charges as Conditions of Assumption

This Court agrees with the Bankruptcy Court that the 2000 pre-petition attorney's fees and the utility and repair charges

---

**5.** BHA's appeal argues that certain post-petition utility charges should be made a condition of assumption. Brief for Appellant at 1 (Paper 6) ("the Bankruptcy Court err[ed] by failing to require the Debtor to pay as costs of assumption excess utility charges, (including post-petition excess utility charges), and damage repair charges."). As Parker points out, the record does not indicate that BHA raised payment of these post-petition charges as an assumption condition in the Bankruptcy

Court, nor does it provide any estimate of the amount of these charges. However, payment of these post-petition charges is not a permissible condition of assumption under same analysis the Court applies to the pre-petition charges, see discussion *infra* Part III.A.3. Thus, the Court will use the phrase "utility and repair charges" to refer to both the pre- and post-petition utility charges for the remainder of this opinion.

should not be included as a condition to the assumption of the lease. Placing these conditions on the assumption would contravene both federal and state law. Before addressing these issues further, the Court turns to the federal statutory framework underlying assumption of the lease.

### 1. Statutory Framework

■ A Chapter 13 debtor is required to file a plan identifying claims against the estate and how these claims will be resolved. 11 U.S.C.A. §§ 1321, 1322 (West 1993 & Supp.2001). With regard to leases, the plan may, "subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C.A. § 1322(b)(7)(West 1993). Section § 1322(b)(3) provides that the plan may "provide for the curing or waiving of any default." 11 U.S.C.A. § 1322(b)(3)(West 1993). Section 365(b)(1) describes the conditions under which a debtor may assume a lease that has been in default. The debtor cannot assume unless she:

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C.A. § 365(b)(1)(West 1993). With regard to curing a default, § 1322(e) further provides that, "the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C.A. § 1322(e)(West Supp.2001).

In the present case, BHA challenges the Bankruptcy Court's interpretation of the "actual pecuniary loss" for which it must be compensated under § 365(b)(1)(B). BHA argues that the 2000 pre-petition attorney's fees and the utility and repair charges must be compensated in order to fully "cure" the rent default.

### 2. 2000 Pre–Petition Attorney's Fees

■ It is well-established that 11 U.S.C. § 365(b)(1)(B) does not create an independent basis for a lessor's claim of attorney's fees as a condition to curing a default and assuming a lease in bankruptcy. *In re Shangra–La, Inc.,* 167 F.3d at 849; *In re Westside Print Works, Inc.,* 180 B.R. 557, 564 (9th Cir. BAP 1995); *In re Mid American Oil, Inc.,* 255 B.R. 839, 841 (Bankr.M.D.Tenn.2000); *In re Child World, Inc.,* 161 B.R. 349, 353 (Bankr. S.D.N.Y.1993). Instead, the terms of the lease and the limitations imposed by nonbankruptcy law are the decisive factors for evaluating a claim of attorney's fees. 11 U.S.C. § 1322(e)(West Supp.2001); *In re Shangra–La, Inc.,* 167 F.3d at 849. Federal, as well as state law, is relevant in the present case because the lease involved federally-funded public housing regulated by HUD. Even when a contract includes a fee-shifting clause, nonbankruptcy law may prohibit its enforcement in bankruptcy. *In re Lake,* 245 B.R. 282, 286–87 (Bankr. N.D.Ohio 2000); *In re Schwartz,* 68 B.R. 376, 381–83 (Bankr.E.D.Pa.1986).

#### a. Contract Terms

■ The Court first turns to the terms of the lease itself. In doing so, the Court keeps in mind that under the "American Rule" parties generally bear the responsibility for their own fees and costs in litigation, absent enforceable con-

tract language allowing fee-shifting. *Alyeska Pipeline Serv. Co. v. The Wilderness Society,* 421 U.S. 240, 247–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The form lease between Parker and BHA contains a fee-shifting provision:

> (f) In the event that the Authority is required to take legal action against the Tenant either (a) to evict the Tenant from one of the Authority's dwelling units for whatever reason or (b) to collect its rent or to recover for damages to one of its dwelling units, the Authority shall recover from the Tenant as part of its damages all reasonable costs incurred in the prosecution of such legal action including reasonable attorney's fees.

Dwelling Unit Lease (hereinafter "Lease") para 12(f), Suppl. R. at 5 (Paper 9). BHA argues that because BHA instituted its 2000 ejectment action for the purpose of collecting past due rent and damages, Parker is required to reimburse it for the legal fees it incurred in bringing the ejectment action as a condition of the assumption.

At the outset, it is clear Parker is not required by the terms of the lease to pay attorney's fees in order to cure her default. BHA's interpretation of the provision suggests that the institution of such legal action alone creates Parker's liability for the attorney's fees. However, as the Bankruptcy Court found, a narrower interpretation of the provision is also possible. That is, the lease provision can be interpreted as requiring payment of attorney's fees "as part of [BHA's] damages," i.e. only after BHA has prevailed on the merits of the ejectment action.

The Court agrees that this latter interpretation of the provision is the correct one. In doing so the Court relies not only on the ambiguous language of the fee-shifting provision, as the Bankruptcy Court did. The Court also finds convincing two additional factors.

First, this interpretation is appropriate given the reality that the fee-shifting provision of the form lease acted as a contract of adhesion. A contract of adhesion is "[a] standard-form contract prepared by one party, to be signed by the party in a weaker position, ... who has little choice about the terms." Black's Law Dictionary 318–19 (7th ed.1999). Recognizing that mortgages are often adhesion contracts, bankruptcy courts have interpreted fee-shifting clauses strictly against the mortgage lender. *In re Romano,* 174 B.R. 342, 344–45 (Bankr.M.D.Fla.1994); *In re Barrett,* 136 B.R. 387, 393 (Bankr.E.D.Pa. 1992); *In re Roberts,* 20 B.R. 914, 921 (Bankr.E.D.N.Y.1982) (fee-shifting terms of form contracts "are to be most strongly construed against the mortgagee").

Like mortgages, leases can be adhesion contracts drafted by landlords. The disparity in bargaining power is probably at its height in the instance of low-income tenants, like Parker, who are desperate to secure housing and cannot afford it on the private market. *See Gonzalez v. County of Hidalgo,* 489 F.2d 1043, 1046 (5th Cir. 1973) (recognizing that poor tenants, such as migrant farmworkers, are often compelled to sign form leases "without any real freedom of contract"). Accordingly, as in the context of mortgage fee-shifting clauses, the fee-shifting clause in the form lease signed by Parker should be strictly construed against BHA.

Second, the narrower interpretation of the fee-shifting provision is required to make the lease consistent with HUD regulations, which are binding on all public housing authorities. *Thorpe v. Hous. Auth. of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (finding HUD regulations mandatory for local housing authority). These regulations

prohibit lease provisions in which "the tenant agrees to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the action." 24 C.F.R. § 966.6(h)(2001). As interpreted by BHA, the lease's automatic imposition of attorney's fees upon the filing of a lawsuit violates this regulation. *Miles v. Metro. Dade County*, 916 F.2d 1528, 1533 (11th Cir.1990) (automatic imposition of court cost charges upon filing of lawsuits violated HUD intent "to allow imposition of [such charges] *only* when the [public housing authority] receives a judgment against the tenant assessing costs") (emphasis in original). In contrast, interpreting the lease provision as requiring payment of attorney's fees "as part of [BHA's] damages," i.e. after BHA has prevailed on the merits, is consistent with the regulation. *See* 24 C.F.R. § 966.6(h)(2001) (prohibition on outcome-neutral fee-shifting provisions "does not mean that the tenant as a party to the lawsuit may not be obligated to pay attorney's fees or other costs if he loses the suit.").

Under the narrow interpretation of the lease, Parker is not contractually liable to BHA for the attorney's fees. While the clerk of the Superior Court issued a writ of possession, no judicial determination that BHA was entitled to possession or any monetary judgment was made pursuant to V.R. Civ. P. 58 and 79(a). The fact that BHA's ejectment action may have been meritorious is irrelevant because no attorney's fees were imposed by a court. *Miles*, 916 F.2d at 1534. Because BHA did not prevail on the merits of the ejectment action, Parker is not contractually obligated under the lease to reimburse it for attorney's fees.

### b. State Law

Having determined that there is no contractual basis for conditioning assumption of the lease on payment of BHA's attorney's fees, the Court now turns to state law. In doing so, the Court finds no state law basis for the attorney's fees condition. Instead, the Court agrees with the Bankruptcy Court that such a provision is prohibited by Vermont's statutory right of redemption.

▮▮▮▮ Vermont law does not prohibit the collection of attorney's fees as damages in an ejectment proceeding. Vt. Stat. Ann. tit. 12, § 4854 (Lexis Supp.2000) (providing court discretion to award reasonable attorney's fees in an ejectment action when a written rental agreement so provides and the court has awarded the plaintiff a judgment of possession). In order to evict a residential tenant for failure to pay rent, however, a landlord must follow the five-step process described in *In re Stoltz*, 197 F.3d 625, 630 (2d Cir.1999). This process requires the landlord to give proper notice, wait for the termination date in the notice to pass, obtain a judgment of possession via an ejectment action, obtain a writ of possession, and execute the writ. *Id.* (citing Vt. Stat. Ann. tit. 9, § 4467(a); Vt. Stat. Ann. tit. 12, § 4854).

▮▮▮▮ At any point prior to execution of the writ the tenant has the right under Vt. Stat. Ann. tit. 12, § 4773 to redeem the premises and discontinue the ejectment action by paying "the rent in arrear with interest and the costs of suit." Vt. Stat. Ann. tit. 12, § 4773; *accord In re Couture*, 225 B.R. 58, 62 (D.Vt.1998) (finding that the right to redeem expires only upon execution of the writ of possession). During the time period before the writ of possession is executed, the tenant retains a possessory interest in the premises. *In re Couture*, 225 B.R. at 62. This right is preserved by the automatic stay of the

Bankruptcy Code. *In re Stoltz*, 197 F.3d at 630.

■ In the present case, the Bankruptcy Court properly determined that Parker retained her right to redeem at the time she filed for bankruptcy protection. At that time the writ of possession had not been executed against her, nor had a judgment of possession been entered against her. Once she filed for bankruptcy, the automatic stay preserved this right in her bankruptcy estate by halting BHA's ejectment action.

■ Moreover, Judge Brown correctly determined that attorney's fees could not, under Vermont law, be made a condition of the assumption. The Vermont Supreme Court held that "costs of the suit" under § 4773 do not include attorney's fees, regardless of what the lease at issue states. *Ravenwood Estates, Inc. v. Mason*, 156 Vt. 642, 642, 590 A.2d 884, 884 (1991).[6] Accordingly, Parker's right of redemption was not conditioned upon reimbursement of the attorney's fees. To require such a reimbursement prior to assumption of the lease would contravene Vermont's policy of granting tenants the right to redeem without being saddled with attorney's fees.[7] Thus, BHA cannot look to Vermont law to support its claim for attorney's fees as a condition to assumption.

The Court does not find convincing BHA's citation to a case in which a Vermont Superior Court judge assessed attorney's fees as part of a judgment for tenants redeeming under § 4773. *Brattleboro Hous. Auth. v. Jacobs*, No. S26–1–99 Wmc (Vt.Sup.Ct. Aug. 5, 1999). This case also involved tenants of BHA whose leases contained similar fee-shifting provisions to that in Parker's lease. The Superior Court specifically cited *Ravenwood* in stating that payment of the fees "is not a precondition of the tenants' redemption of their tenancies under § 4773." *Id.*, slip op. at 6. BHA's reliance on this case is thus mistaken. Vermont law permits such fees to be assessed in an ejectment action after final judgment, but it does not permit them as an express condition of the right to redeem.

### 3. Utility and Repair Charges

BHA also contends that the Bankruptcy Court erred in failing to include certain utility and repair charges incurred prior to and after Parker's Chapter 13 petition. BHA argued in the Bankruptcy Court that these charges should have been considered past due "rent" owed to it along with the $784 arrearage. It is unclear whether BHA also makes this argument on appeal or whether it simply relies on the broader 11 U.S.C. § 1322 "cure" argument addressed below. Under the assumption that BHA continues to argue that these charges are rent arrearage, the Court addresses the argument here.

As discussed *supra* Part II.A.2, the terms of the lease, state law, and federal law are the relevant factors for determining the conditions required for assumption in this case. The lease provides under the heading of "Rent Payments" that the tenant will pay BHA "on the first day of the second month following the month in which such charges were made" any excess utility charges and "all other charges made by the Authority pursuant to the Condi-

---

6. As Parker points out, *Ravenwood* involved a lease containing a similar fee-shifting provision. Stipulation of Facts, Suppl. R. at 27, para. 15 (Paper 9).

7. The wisdom of this policy is apparent in Parker's case. BHA's claim for the $932 in 2000 pre-petition attorney's fees alone nearly doubled the rent arrearage and costs she had to pay under § 4773.

tions of Occupancy, including, but not limited to [charges for loss or damage to BHA property]." Lease para. 4(c), Suppl. R. at 1 (Paper 9). Relying upon this lease provision, BHA argues that Parker's failure to pay these charges constitutes a default under the lease that must be cured prior to assumption of the lease under § 365(b)(1).

In its brief, BHA notes that while the payment of attorney's fees does not constitute "costs of the suit" under § 4773, the Vermont Supreme Court's decision in *Ravenwood* did not determine whether utility and repair charges must be paid by a tenant prior to redeeming. However, Judge Brown correctly concluded that construing these charges as "rent" for the purpose of an ejectment action runs afoul of federal law.

Federal law defines the amount of rent that a public housing tenant must pay each month. The Brooke Amendment to the U.S. Housing Act of 1937 generally limits this amount to 30% of the tenant's household adjusted income. 42 U.S.C.A. § 1437a(a)(1)(A) (West 1993). Under HUD implementing regulations excess utility and damage fees are not identified as rent but as items that a public housing authority may charge tenants in addition to their monthly rent. 24 C.F.R. § 966.4(b)(1), (2)(2001) (defining rent and outlining separate procedures that a housing authority must follow in imposing utility and repair charges). The Brooke Amendment and HUD's implementing regulations are entitled to deference by the courts. *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 430 & n. 11, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).

Because federal law governs the amount that a public housing authority may charge for rent, BHA may not use the terms of its lease to broaden the definition of rent to include utility or repair charges,

or (to the extent BHA so argues) attorney's fees. *Binghamton Hous. Auth. v. Douglas*, 630 N.Y.S.2d 144, 144, 217 A.D.2d 897, 898, (1995); *Brattleboro Hous. Auth. v. Cleaves*, No. 398–9–00 Wmc, slip op. at 6–7 (Vt.Sup.Ct. Mar. 14, 2001) (rejecting as inconsistent with federal housing law BHA's claim for attorney's fees and utility and repair charges as "rent" based on lease terms); *Brattleboro Hous. Auth. v. MacElman*, No. 366–9–00 Wmc, slip op. at 6–7 (Vt.Sup.Ct. Mar. 14, 2001) (same). *Cf. Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 864 (2d Cir.1970) (housing authority cannot impose miscellaneous charges on tenants without due process, despite lease provision permitting the charges). Nor may BHA use this broader definition of rent as a basis for eviction under Vermont law. *Cleaves*, No. 398–9–00 Wmc, slip op. at 6–7; *MacElman*, No. 366–9–00, Wmc, slip op. at 6–7; *see also Douglas*, 630 N.Y.S.2d at 144, 217 A.D.2d at 898 (reaching the same conclusion in a N.Y. summary eviction proceeding). Thus, the Bankruptcy Court was correct in determining that payment of the utility and repair charges was not a condition necessary to Parker's cure of the rent default prior to assumption of the lease.

**4. Curing the Default Under Chapter 13**

As a general matter, BHA has contended on appeal that the Bankruptcy Court erred in construing the requirements for curing a default under 11 U.S.C. § 365(b)(1) as equivalent to the requirements for redeeming a tenancy under Vt. Stat. Ann. tit. 12, § 4773. BHA supports this argument by relying on the Second Circuit's decision in *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), for the proposition that Parker must pay the attorney's fees and repair and utility fees in order to "put the landlord in the position it would have been

in had no default occurred [as required under § 1322]." Brief for Appellant at 9. *Taddeo* involved the cure of a home mortgage default, but the Court addressed the meaning of "cure" by looking to its interpretation in the context of a § 365(b) executory contract or lease default. The Court stated that:

> Curing a default commonly means taking care of the triggering event and returning to the pre-default conditions. The consequences are thus nullified … Under § 365(b) the trustee may assume executory contracts and unexpired leases only if he cures defaults—but the cure need address only the individual event of default, thereby repealing the contractual consequences.

*Id.* at 26–27.

The requirement that the relationship between the debtor and creditor be returned to "pre-default conditions" does not alter the analysis above. As amended in 1994, § 1322 provides that in any Chapter 13 plan seeking to cure a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law." 11 U.S.C. § 1322(e)(West.Supp.2001); *accord* 8 Lawrence P. King, *Collier on Bankruptcy* § 1322.18 (3d ed.2000) (identifying the terms of the lease and limitations of state law as two conditions that must be met under § 1322(e) before interest or other charges can be required as part of a bankruptcy cure). As discussed above, inclusion of attorney's fees and the repair and utility charges as a condition of the assumption would be violative of both federal and state nonbankruptcy law, regardless of the presence of any provision for such payment in the lease. Accordingly, *Taddeo* does not provide support to BHA for reimbursement of the attorney's fees and charges.

### B. 2000 Pre–Petition Attorney's Fees as a General Unsecured Claim

Finally, BHA argues that even if the attorney's fees should not have been repaid as a condition of Parker's assumption of the lease, BHA is entitled to compensation for these fees as a general unsecured creditor. BHA argues that the Bankruptcy Court should have included these fees as general unsecured claims in the Plan, just as it included the fees awarded in the 1999 ejectment action. The Court disagrees.

There is an important distinction between BHA's two claims for attorney's fees. While the claim for the 2000 fees is merely that, a claim for fees, the 1999 claim had been reduced to a judgment against Parker. In its decision the Windham Superior Court assessed attorney's fees of $1,391.50 and entered a final judgment of record against Parker that included these fees as monetary damages. *Parker I*, No. S194–5–99 Wmc, slip op. at 2. In contrast, in the 2000 ejectment action, the clerk of the Superior Court issued a writ of possession in favor of BHA, but the Superior Court did not enter a judgment of possession, pursuant to the procedures set out in V.R. Civ. P. 58 and 79(a). Nor did it assess attorney's fees or enter a judgment for any monetary amount.

BHA argues that whether or not the Superior Court entered a judgment as to the 2000 pre-petition attorney's fees, Parker is obligated to pay such fees by the same fee-shifting provision of the lease discussed *supra* Part III.A.2.a. As it did in the context of including the attorney's fees as a condition of assumption, BHA argues that because BHA instituted its ejectment action for the purpose of collecting past due rent and damages, Parker is required to reimburse it as a general unsecured

creditor for the legal fees it incurred in bringing the action.

However, this argument hinges on an interpretation of the fee-shifting provision which is contrary to HUD regulations and which, based on the adhesive nature of the contract, must be interpreted more narrowly. Under the narrower interpretation adopted by this Court and the Bankruptcy Court, the fee-shifting provision can act only when BHA has received a judgment.

Thus, BHA's citation to Vt. Stat. Ann. tit. 12, § 4854 is without merit. Consistent with the HUD regulation, a Vermont court has the discretion under § 4854 to award reasonable attorney's fees pursuant to a written rental agreement when it finds that the landlord is "entitled to possession" and grants a judgment for possession. Vt. Stat. Ann. tit. 12, § 4854 (Lexus Supp. 2000) ("the court may award reasonable attorney fees" along with "judgment for possession and rents due, damages and costs"). In this case the Court never granted BHA a judgment on the merits and it never chose to award BHA attorney's fees. *Cf. Jacobs*, No. S26–1–99 Wmc, slip op. at 7 (entering a final judgment and including an assessment of attorney's fees).

The Court is also unpersuaded by BHA's assertion that the Bankruptcy Court's decision not to include the 2000 pre-petition attorney's fees "simply because they had not been reduced to judgment pre-petition goes against the weight of authority." Brief for Appellant at 10. BHA cites a single case for this broad proposition, *In re Hunter*, 203 B.R. 150 (Bankr.W.D.Ark.1996). *In re Hunter* holds that reasonable attorney's fees may be awarded to an unsecured creditor when "a contract, statute, or other law provides for recovery of such fees." *Id.* at 156 (citing *In re United Merchs. & Mfrs., Inc.*, 674 F.2d 134 (2d Cir.1982)).

In this case, however, no such contractual or statutory basis for the claims exists. BHA's lease cannot, under 24 C.F.R. § 966.6(h), provide for attorney's fees without a judgment on the merits. In addition, while Vt. Stat. Ann. tit. 12, § 4854 permits a court to award attorney's fees, it does so in connection with a judgment of possession or damages, which BHA did not have. Accordingly, the Bankruptcy Court's decision cannot be said to go against the weight of authority.

**IV. Conclusion**

Wherefore, the Court rules as follows:

The Order Granting Motion to Assume Residential Lease, Fixing Costs of Assumption, Addressing Objection to Landlord's Attorneys Fees, and Denying Relief from Automatic Stay entered by the Bankruptcy Court on April 26, 2001 is **AFFIRMED**.