OPINION OF THE COURT
James C. Harberson, Jr, J.
Facts
The Watertown Housing Authority (W.H.A.) has instituted three summary proceedings in this court based on nonpayment of rent as provided under RPAPL 711 (2): Watertown Hous. Auth. v Kirkland & Baia (Index No. 21216LT [Kirkland/Baia)), Watertown Hous. Auth. v Bagby (Index No. 21217LT) and Watertown Hous. Auth. v Nelson (Index No. 21213LT). The respondents have argued that the total payment when offered was reduced by the W.H.A. by various amounts reflecting unpaid late charges (Bagby), seasonal air-conditioning charges (Kirkland/Baia) and a refusal to accept the tendered rent by the W.H.A. until the WH.A. was reimbursed the $35 court filing fee incurred in the case (Nelson).
The W.H.A. has argued that the rent under the contract for the lease of the space in the dwelling unit can be enhanced by adding any other lease contract costs incurred by the tenant that remain unpaid after a given time period by renaming it “rent” and then make it part of the rent demand in case of a nonpayment proceeding.
This court determined in Watertown Hous. Auth. v Kennedy (Watertown City Ct, Sept. 16, 1997, Harberson, Jr., J., Index No. LT14247) that the Watertown Housing Authority is bound by the same federal regulations as the Binghamton Housing Authority cited in Binghamton Hous. Auth. v Douglas (217 AD2d 897 [1995]).
In the Binghamton Hous. Auth. case the authority attempted to evict a tenant in a summary proceeding based on nonpayment of rent and “ ‘added rent’, consisting of late fees, utility fees and maintenance fees.” (Id. at 898.)
The Court stated that the issue was “whether such charges are deemed ‘rent’ and can therefore be collected through a summary proceeding. Noting that through such a [summary] proceeding a landlord may typically seek judgment for money owed as rent, but not other charges . . . unless such additional *282 charges are clearly and expressly designated as ‘rent’ in the governing document . . . [The Court concluded that] petitioner may not recover these charges through the proceeding by defining them as ‘added rent’ in its lease with respondent.” (Id.)
The Court then explained that notwithstanding a lease provision that deemed such unpaid charges as “added rent” the “issue is governed by standards different from those applicable to private landlord/tenant relations.” (Id.)
The Court concluded,
“Pursuant to the Brooke Amendment, as implemented by the public housing regulations, the total tenant payment allowable as rent is only that amount designated by the guidelines therein (see, 24 CFR 913.107 [a]) and does not include ‘charges for excess utility consumption or other miscellaneous charges’ (24 CFR 913.102; see generally, 24 CFR 966.4). Accordingly, since the Federal regulations fully govern the amount that petitioner may charge as rent, we find that City Court, affirmed by County Court, correctly determined that the regulations, rather than the lease provisions, constitute the governing document. Accordingly, City Court properly limited petitioner’s judgment to past due ‘rent’. As to petitioner’s contention that it would be precluded from instituting a separate proceeding to collect such amounts deemed ‘added rent’ pursuant to the doctrine of collateral estoppel (see, e.g., Liss v Trans Auto Sys., 68 NY2d 15, 22), we find no merit. Petitioner’s monetary recovery in the summary proceeding is limited to those amounts statutorily defined as rent and, therefore, the recovery of the miscellaneous charges is not allowed (see, 24 CFR 913.107, 966.4 [b] [1] [3]; [f] [10]).” (Id. at 898-899; see also Port Chester Hous. Auth. v Turner, 189 Misc 2d 603, 604 [2001] [“We also conclude that under the Federal public housing program involved herein, it was error to include in the final judgment non-rent items, even though characterized as ‘additional rent’ in the agreement between the parties (see, Matter of Binghamton Hous. Auth. v Douglas, 217 AD2d 897, 898)”].)
In these cases, the court concludes as it did in Watertown Hous. Auth. v Kennedy that “under the Federal public housing program involved herein . . . nonrent items, even though characterized as [‘rent’] in the agreement between the parties” *283 (Port Chester Hous. Auth. v Turner, supra at 604), are not “allowable as rent is only that amount designated by the guidelines therein (see, 24 CFR 913.107 [a]) and does not include ‘charges for excess utility consumption or other miscellaneous charges’ (24 CFR 913.102; see generally, 24 CFR 966.4)” and so “monetary recovery in the summary proceeding is limited to those amounts statutorily defined as rent and, therefore, the recovery of miscellaneous charges is not allowed (see, 24 CFR 913.107, 966.4 [b] [1] [3]; [f] [10])” — for which the “institution of a separate proceeding for the recovery of such charges would not be barred.” (Binghamton Hous. Auth. v Douglas, supra at 898-899.)
It also came to the court’s attention in these cases two practices by the Watertown Housing Authority engaged to circumvent the federal public housing program rules on rent and its collection.
In the Watertown Hous. Auth. v Kirkland/Baia case a $9 air-conditioner charge for extra electricity usage was subtracted when the respondent paid the proper amount of rent due as established by the federal guidelines. So, instead of being credited for the full amount tendered, as was due under these guidelines, the W.H.A. subtracted this seasonal utility charge from that amount and then claimed an underpayment of the rent upon which the W.H.A. based a nonpayment proceeding. Also, in the Watertown Hous. Auth. v Bagby case, the W.H.A. subtracted late charges from the rent payment creating a shortfall and based the nonpayment proceeding upon underpayment of rent.
In both the Bagby and Kirkland/Baia cases notwithstanding the clear federal guidelines that “late fees” and “utility fees” cannot be deemed “rent” so as to be used to inflate the amount of rent claimed above what the federal guidelines allow for rent (Binghamton Hous. Auth. v Douglas), the W.H.A. could not in the guise of “added rent,” “past due rent,” or by whatsoever means the W.H.A. may use to define those types of nonrent charges, subtract from the rent payment those other rental contract charges so as to create a “deficiency” in the rent payment for a given period thus resulting in a nonpayment and/or underpayment of rent creating a basis for a nonpayment proceeding.
As this court pointed out in the earlier case of Watertown Hous. Auth. v Kennedy, citing Comity Realty Corp. v Peterson (118 Misc 2d 796 [1983]), in such case where a landlord “rear *284 ranges basic notions of fairness and good faith . . . [as] a pernicious weapon against unsuspecting tenants, especially those who are not represented by counsel” (id. at 798), the court will not permit similar conduct by the W.H.A. to stand in proceedings before it — especially in the case where the tenant’s legal rights under the federal housing laws are violated by the W.H.A actions.
In the case of Watertown Hous. Auth. v Nelson a more egregious violation of the tenant’s rights was involved when the WH.A. refused to accept the tendered lawful rent until the tenant also paid to the WH.A. the $35 court fee expended to place the case on the court calendar. The tenant paid that $35 and the W.H.A. dropped the demand for a possessory warrant for nonpayment of rent that had been actually tendered and rejected by it.
In Miles v Metropolitan Dade County (916 F2d 1528 [1990], cert denied 502 US 898 [1991]), the plaintiff was a resident of a public housing unit in whose unit statement was included a filing fee cost incurred by the public housing authority when it filed an earlier eviction petition that has been dismissed by the court without awarding costs. The resident was told that if she did not pay this filing fee debt, she would be “subject to eviction for non-payment of rent.” (Id. at 1530.)
The court noted that “it was the policy of the [authority] to bill, and collect, court cost charges from tenants for eviction actions even though the particular eviction action was dismissed or settled without an award of court costs” and “[a] tenant who did not pay [such] would be subject to eviction for non-payment of rent.” (Id.)
In the Miles case, a class action, the court awarded “rent credit” to all those subject to these impermissible collections of court costs based “on the claims of a substantive due process violation and Brooke Amendment [claims].” (Id. at 1531.) Later in its opinion the court said:
“The Brooke Amendment itself does not define rent. However, the Department of Housing and Urban Development (‘HUD’) regulations promulgated under the Act define ‘tenant rent’ as ‘[t]he amount payable monthly by the Family as rent to the [Public Housing Authority].’ 24 C.F.R § 913.102 (1989). ‘Tenant rent’ is calculated by taking ‘total tenant payment’ and subtracting any applicable ‘Utility Allowance.’ Id. For all tenants, ‘total tenant payment’ *285 does not include ‘charges for excess utility consumption or other miscellaneous charges (see section 966.4 of this chapter).’ ” (Id. at 1531-1532.)
Footnote 4 (at 1532) states:
“[t]he district court treated the court costs charge as rent because ‘if the tenant[s] failed to pay [the court costs charge,] they were evicted for nonpayment of rent.’ District Court Opinion at 17. The plaintiffs had argued below that both federal and state law provide different procedures for eviction for non-payment of rent than for breach of other lease terms. See 42 U.S.C. § 1437d(l)(3) (Supp. V 1987) (PHA must give 14-day notice for termination of lease for failure to pay rent but must give 30-day notice for other causes); 24 C.F.R. § 965.4(1) (1989) (same). Apparently, the County was using the procedures for evicting a tenant who did not pay rent when the court costs charges were not paid. Even if the County’s use of these procedures was incorrect, this fact does not transform a miscellaneous charge into rent. The regulations explicitly separate tenant charges into two categories— miscellaneous charges not subject to the 30% limitation and rent charges included in the 30% income limits. These explicit regulations imply that the drafters did not intend to give the PHAs discretion to decide whether a particular charge is ‘rent.’ ”
In In re Parker (269 BR 522 [D Vt 2001]), the court ruled that “HUD regulations . . . are binding on all public housing authorities. Thorpe v. Hous. Auth. of Durham, 393 U.S. 268, 280-81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).” (Id. at 530.)
The court then addressed “utility and repair charges” which the authority claimed were part of past due “rent.” The court noted that “the terms of the lease, state law, and federal law are the relevant factors for determining the conditions required for assumption in this case” (id. at 532).
The court observed that the lease “under the heading of ‘Rent Payments’ ” required the tenant to pay “such charges” within a given time period, i.e., “excess utility charges and ‘all other charges made by the Authority pursuant to the Conditions of Occupancy, including, but not limited to [charges for loss or damage to BHA property]’ ” and that a “failure to pay these charges constitutes a default under the lease that must be cured prior to assumption of the lease” (id. at 532-533). The court af *286 firmed the lower court’s conclusion “that construing these charges as ‘rent’ for the purpose of an ejectment action runs afoul of federal law” (id. at 533).
The court then ruled:
“Federal law defines the amount of rent that a public housing tenant must pay each month. The Brooke Amendment to the U.S. Housing Act of 1937 generally limits this amount to 30% of the tenant’s household adjusted income. 42 U.S.C.A. § 1437a (a) (1) (A) (West 1993). Under HUD implementing regulations excess utility and damage fees are not identified as rent but as items that a public housing authority may charge tenants in addition to their monthly rent. 24 C.F.R. § 966.4 (b) (1), (2) (2001) (defining rent and outlining separate procedures that a housing authority must follow in imposing utility and repair charges). The Brooke Amendment and HUD’s implementing regulations are entitled to deference by the courts. Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 430 & n. 11, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).
“Because federal law governs the amount that a public housing authority may charge for rent, BHA may not use the terms of its lease to broaden the definition of rent to include utility or repair charges, or (to the extent BHA so argues) attorney’s fees. Binghamton Hous. Auth. v. Douglas, 630 N.Y.S.2d 144, 144, 217 A.D.2d 897, 898, (1995); Brattleboro Hous. Auth. v. Cleaves, No. 398-9-00 Wmc, slip op. at 6-7 (Vt.Sup.Ct. Mar. 14, 2001) (rejecting as inconsistent with federal housing law BHA’s claim for attorney’s fees and utility and repair charges as ‘rent’ based on lease terms); Brattleboro Hous. Auth. v. MacElman, No. 366-9-00 Wmc, slip op. at 6-7 (Vt.Sup.Ct. Mar. 14, 2001) (same). Cf. Escalera v. New York City Hous. Auth., 425 F.2d 853, 864 (2d Cir.1970) (housing authority cannot impose miscellaneous charges on tenants without due process, despite lease provision permitting the charges). Nor may BHA use this broader definition of rent as a basis for eviction under Vermont law. Cleaves, No. 398-9-00 Wmc, slip op. at 6-7; MacElman, No. 366-9-00, Wmc, slip op. at 6-7; see also Douglas, 630 N.Y.S.2d at 144, 217 A.D.2d at 898 (reaching the same conclusion in a N.Y. summary eviction proceed *287 ing). Thus, the Bankruptcy Court was correct in determining that payment of the utility and repair charges was not a condition necessary to Parker’s cure of the rent default prior to assumption of the lease.” (Id. at 533.)
In the Nelson case facts where the W.H.A. refused the rent payment until the $35 filing fee had been paid or the nonpayment eviction would be pursued are identical with the facts in the Miles v Metropolitan Dade County case. In both cases the public housing authority attempted to collect court costs that had not been awarded by a court by a threat of declaring such “rent” for the purpose of using a nonpayment eviction proceeding to evict the tenant.
“[T]enant rent” calculations are provided by the Brooke Amendment formula so other “charges” cannot be “transformed into rent” because “[t]he regulations explicitly separate tenant charges into two categories — miscellaneous charges not subject to the 30% limitation and rent charges intended by the 30% income limits. These explicit regulations imply that . . . the PHAs [were not given] discretion to decide whether a particular charge is ‘rent’ ” (Miles, supra at 1532 n 4).
The facts in In re Parker and the Kirkland/Baia case dealing with “excess utility charges” and the failure to pay the same converting the unpaid assessments or charges into nonpayment of “rent” under the lease terms “for the purpose of an ejectment action run[ ] afoul of federal law” (Parker at 533).
The court clearly said that “[b]ecause federal law governs the amount that a public housing authority may charge for rent, BHA may not use the terms of its lease to broaden the definition of rent to include utility or repair charges.” (Id., citing Binghamton Hous. Auth. v Douglas, supra.)
Conclusion
The court finds that in each of these cases the Watertown Housing Authority, notwithstanding the federal rules (Brooke Amendment) for determining what is rent based on “[t]hese explicit regulations . . . that. . . did not intend to give the PHAs discretion to decide whether a particular charge is ‘rent’ [as] [t]he regulations explicitly separate tenant charges into two categories — miscellaneous charges not subject to the 30% limitation and rent charges included in the 30% income units [Brooke Amendment]” (Miles, supra at 1532 n 4), has persisted in the prohibited practice transforming unpaid utility charges, late *288 charges, maintenance charges and other miscellaneous fees and charges under the lease contract is to past due rent by a clause in the lease so it can then claim there amounts as “part due” rent in a nonpayment proceeding under RPAPL 711 (2).
The court finds that this conduct has violated the federal statutes and HUD regulations the Watertown Housing Authority is subject to as a public housing provider and, in particular, the Brooke Amendment. While the W.H.A. may seek relief for any breach of the lease as provided for elsewhere in the law, it cannot be used as a basis for a nonpayment proceeding under RPAPL 711 (2) any sums due under the lease that are not authorized as rent by the Brooke Amendment (24 CFR 966.4).
These petitions are dismissed without prejudice to be refiled once the rent allowed as such has been properly determined by the federal law and regulations.