44 N.J. Super. 38 (1957)
129 A.2d 583
BOOTS 'N SADDLE, A NEW JERSEY CORPORATION, APPELLANT,
v.
MUNICIPAL BOARD OF ALCOHOLIC BEVERAGE CONTROL OF THE CITY OF NEWARK, DIVISION OF ALCOHOLIC BEVERAGE CONTROL AND WILLIAM HOWE DAVIS, DIRECTOR, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1956.
Decided January 10, 1957.
*39 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Alexander Krauss argued the cause for Boots 'N Saddle (Messrs. Levy & Krauss, attorneys; Messrs. Paul E. Parker and Irving J. Zwillman, on the brief).
Mr. Samuel B. Helfand argued the cause for the Division of Alcoholic Beverage Control (Mr. Grover C. Richman, Jr., Attorney-General).
Mr. Jacob M. Goldberg argued the cause for the Board of Alcoholic Beverage Control of the City of Newark (Mr. Vincent P. Torppey, Corporation Counsel; Mr. James E. Abrams, on the brief).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Boots 'N Saddle, a New Jersey corporation, appeals from an order of the Division of Alcoholic Beverage Control, affirming a determination of the Board of Alcoholic Beverage Control of the City of Newark, which refused to renew Boots 'N Saddle's plenary retail liquor consumption license for the year July 1, 1956 to June 30, 1957. The Newark board had refused to renew the license for the preceding year, but it had been reversed by the Division with respect to that year.
The corporation had been operating a tavern at 441 Washington Street, Newark, since January 1952. On November 9, 1953 its license had been suspended for 45 days because it had sold liquor for consumption off the premises, other than in original containers, and because of other offenses, including the suffrance of obscene language on the premises. Furthermore, it appears from the testimony of *40 a police captain, taken under oath before the Newark board in the present proceeding, that from January 1952 to June 30, 1955, 11 complaints had been made as to alleged incidents on the premises, including these: January 20, 1955, a charge of lewdness and immoral activities, which was apparently dismissed; November 6, 1954, a charge of solicitation for prostitution, which was dismissed; and eight complaints as to assaults, the outcome of which is not stated. The license was apparently not suspended in connection with any of these incidents.
In addition, it appeared from the captain's testimony that there were four charges made against the licensee during the licensing year ending June 30, 1956: permitting assaults or brawls to take place on the premises on July 16, 1955 and May 4, 1956; and sales to minors on March 23, 1956 and April 4, 1956. One of these charges respecting an assault resulted in a 20 day suspension of the license, and one of the charges for making a sale to a minor resulted in a 15 day suspension of the same; the other two charges were either dismissed or not prosecuted.
At the hearing before the Division it was established that the police were summoned 60 times during the licensing year ending July 1, 1956, apparently as a result of messages relayed through a Newark District Telegraph buzzer installed in the tavern. Furthermore, in that hearing a plain-clothes-man in the police department who was assigned to the local precinct, testified that after taking into account the complaints that arise from the premises and the numerous times the radio cars are called there, he thought Boots 'N Saddle was worse than any of the other taverns in the precinct (another precinct than that in which Nordco is located). The 60 calls to the police for help and the complaints above mentioned go to support the Division's finding herein that the tavern was a "trouble spot."
Except for a charge that there has been a violation of due process, the questions raised here are substantially the same as those raised in the case of Nordco Inc., v. State, *41 Div. of Alcoholic Beverage Control, 43 N.J. Super. 277 (App. Div. 1957), decided herewith, and the decision in that case disposes of the issues here.
The due process question arises in connection with the refusal by the Newark board to allow the various licensees, including Boots 'N Saddle and Nordco, Inc., to adduce proofs before it when they applied for a renewal of their licenses. Boots 'N Saddle does not in any way attempt to analyze the constitutional question, and it cites no authority bearing thereon, except Adams Theatre Co. v. Keenan, 12 N.J. 267 (1953), which is referred to in Nordco. It merely asserts that there was a denial of due process. Moreover, it may be noted this question appears not to have been raised in the tribunals below. State ex rel. Wm. Eckelmann, Inc., v. Jones, 4 N.J. 374, 379 (1950).
However, the major circumstance in this case (as well as in Nordco) is that in our opinion there has been no denial of substantial justice. Thus it appears, after the adequate opportunity afforded before the Division for the adduction of proofs, that there is in reality no factual controversy; more than that, it appears that the Newark board was given an adequate picture of the essential aspects of the case, and it afforded counsel a sufficient opportunity for argument. Accordingly, if there was error in the action of the Newark Board, it was of a harmless sort.
The magnificent concept of due process would seem to have acquired a most perverse function if it could be made use of in order to reverse a case where substantial justice has plainly been rendered. As Mr. Justice Jackson said for the Supreme Court in Market Street Ry. Co. v. Railroad Comm. of Cal., 324 U.S. 548, 562, 65 S.Ct. 770, 777, 89 L.Ed. 1171, 1182 (1945):
"* * * due process deals with matters of substance and is not to be trivialized by formal objections that have no substantial bearing on the ultimate rights of parties."
We should add that we do not think that the instant case presents the unusual situation, referred to in Nordco, *42 namely, one in which the court, despite any lack of prejudice, feels impelled to look beyond the case and to remand it for a new trial in order
"to lay down a guide for the tribunal below in the future or to satisfy some fundamental policy."
Under the circumstances we do not think we need involve ourselves in questions of due process.
Affirmed.