796 A.2d 193

HOUSING AUTHORITY & URBAN REDEVELOPMENT AGENCY OF THE CITY OF ATLANTIC CITY, PLAINTIFF–RESPONDENT, v. VANESSA TAYLOR, DEFENDANT–PETITIONER.

Argued October 23, 2001—Decided February 26, 2002.

582

*Kenneth M. Goldman,* argued the cause for appellant (*Douglas E. Gershuny,* Executive Director, Cape–Atlantic Legal Services, Inc., attorney).

*Natonya C. Phillips,* argued the cause for respondent (*Zeller & Bryant,* attorneys).

*Joseph Harris David* argued the cause for *amicus curiae* Legal Services of New Jersey (*Melville D. Miller, Jr.,* Director, attorney; *Mr. David and Mr. Miller,* on the brief).

*Elio R. Mena,* submitted a brief on behalf of *amicus curiae* Housing Authority of the City of Newark.

*Anthony L. Argo, Jr.,* submitted a letter brief on behalf of *amicus curiae* Housing Authority of the City of Hackensack (*Zisa, Hitscherich & Argo,* attorneys).

The opinion of the Court was delivered by

ZAZZALI, J.

In this appeal, we consider 42 *U.S.C.A.* § 1437a(a)(1) (Brooke Amendment), which limits the amount of rent that public housing tenants can be charged. The question before us is whether the Brooke Amendment prohibits a public housing authority (PHA) from assessing tenants attorneys' fees, late charges, and court costs in an eviction proceeding where the express language of the lease defines such fees as "additional rent."

The Housing Authority and Urban Redevelopment Agency of the City of Atlantic City (Housing Authority) instituted a sum-

mary dispossess action against a tenant, Vanessa Taylor, for nonpayment of rent pursuant to *N.J.S.A.* 2A:18–61.1a. On the date of the hearing, Taylor remitted the past due rent but contested the attorneys' fees, late charges, and court costs that she was obligated to pay under the terms of the lease. The trial court entered judgment in favor of the Housing Authority, holding that federal law did not preempt state contract law and the Appellate Division affirmed, *Housing Authority & Urban Redevelopment Agency of the City of Atlantic City v. Taylor,* 334 *N.J.Super.* 573, 580–81, 760 *A.2d* 362 (App.Div.2000). We granted certification. 167 *N.J.* 633, 772 *A.2d* 935 (2001). We also granted the motions of the Housing Authorities of the Cities of Hackensack and Newark, and the motion of Legal Services of New Jersey for leave to appear as *amicus curiae.*

I

The facts of this case are not in dispute. Petitioner Vanessa Taylor resides in the Stanley Holmes public housing development in Atlantic City, New Jersey. Respondent Housing Authority is a federally-funded public housing agency that owns and operates the development. Taylor has lived in the development for approximately fifteen years and occupies a three-bedroom apartment with her six children and her granddaughter. Pursuant to the Brooke Amendment, Taylor's rent is calculated at thirty percent of her adjusted gross monthly income which equals $324 per month. 42 *U.S.C.A.* § 1437a(a)(1)(A). Her lease with the Housing Authority includes the following provisions:

(c) Late Charges—A charge of $20.00 per month for rent, or other charges paid after the 5th calendar day of the month.... The Authority shall provide written notice of the amount of any charge in addition to Tenant Rent, and when the charge is due. Charges in addition to rent are due no sooner than two weeks after Tenant receives the Authority's written notice of the charge....

(d) Legal Fees—*In the event eviction proceedings are instituted by or on behalf of the Authority for possession of the leased premises due to the tenant's failure to pay rent,* utility and maintenance fees, late fees, court costs or any other violation of this lease, *the tenant agrees to pay, as additional rent, the reasonable fees charged by the attorney handling the matter,* plus costs. The attorney's fees shall include, but are not limited to, the costs of filing, serving and litigating any notice

to cease, notice to quit, complaint for possession, or warrant for removal. Attorney's fees shall be charged to the tenant only if the Authority prevails or if it is agreed that such fees will be paid in settlement of the case.

[Emphasis added.]

Beginning in February 1999, Taylor fell behind in her monthly rent payments. Consequently, on March 10, 1999, the Housing Authority initiated a summary dispossess action for nonpayment of rent pursuant to *N.J.S.A.* 2A:18–61.1a. In its complaint, the Housing Authority sought $972 in rent arrearages for the months of February, March, and April. Pursuant to the lease agreement, the Housing Authority also sought $144.50 in attorneys' fees and court costs and $20 in late fees.

On the date of the hearing, Taylor remitted $972 in back rent, but contested the additional charges sought by the Housing Authority. Taylor argued that the charges were not "additional rent" and therefore did not have to be paid to avoid eviction. Specifically, she asserted that the Housing Authority was prohibited from collecting the additional charges by a provision in the Brooke Amendment limiting public housing tenants' total rent to thirty percent of her adjusted gross income.

The trial court held that the Housing Authority was permitted to demand the additional charges as part of the eviction action, declaring that the Brooke Amendment did not preempt state contract law. The court noted that the express language of the lease required Taylor to pay attorneys' fees and costs in the event that the Housing Authority instituted eviction proceedings. Further, the lease specifically characterized such charges as "additional rent." Consequently, the trial court entered a judgment of possession against Taylor, ruling that if she did not deposit $164.50 by the next day, a warrant of removal would issue.[1] The

---

[1] As noted by the Appellate Division, nothing in the record shows whether Taylor paid the additional fees and costs totaling $164.50 to prevent the entry of a judgment of possession and issuance of a warrant of removal. *Taylor, supra,* 334 *N.J.Super.* at 575, 760 A.2d 362. However, the panel was informed by

Appellate Division affirmed, holding that requiring Taylor to pay attorneys' fees, late fees, and court costs in order to avoid entry of a judgment of possession did not violate the Brooke Amendment. *Taylor, supra,* 334 *N.J.Super.* at 580–81, 760 *A.2d* 362. We now conclude that federal law preempts state law and thus compels reversal.

## II

A court must enforce a lease as it is written, absent some superior contravening public policy. *Marini v. Ireland,* 56 *N.J.* 130, 143, 265 *A.2d* 526 (1970); *Fargo Realty, Inc. v. Harris,* 173 *N.J.Super.* 262, 265–66, 414 *A.2d* 256 (App.Div.1980); *Mury v. Tublitz,* 151 *N.J.Super.* 39, 44, 376 *A.2d* 547 (App.Div.1977). In the absence of such public policy, the parties are free to define the terms of the lease agreement, including "rent." *Fargo Realty, supra,* 173 *N.J.Super.* at 266, 414 *A.2d* 256. New Jersey courts long have held that parties to a residential lease may treat attorneys' fees and other costs related to an eviction as "additional rent." *Community Realty Mgmt., Inc. v. Harris,* 155 *N.J.* 212, 234, 714 *A.2d* 282 (1998); *Fargo Realty, supra,* 173 *N.J.Super.* at 266, 414 *A.2d* 256; *see also Vineland Shopping Ctr., Inc. v. DeMarco,* 35 *N.J.* 459, 471, 173 *A.2d* 270 (1961) (holding that sewerage charges may be characterized in lease as "rent"); *University Court v. Mahasin,* 166 *N.J.Super.* 551, 553–54, 400 *A.2d* 133 (App.Div.1979) (observing that attorneys' fees may be treated as "rent"); *Mury, supra,* 151 *N.J.Super.* at 44, 376 *A.2d* 547 (same); *Housing Auth., City of Trenton v. Green,* 118 *N.J.Super.* 544, 545–46, 289 *A.2d* 264 (App.Div.), *certif. denied,* 61 *N.J.* 159, 293 *A.2d* 389 (1972) (same).

Good cause to evict exists where "[t]he person fails to pay rent due and owing under the lease whether the same be oral or written." *N.J.S.A.* 2A:18–61.1(a). To establish good cause for

---

counsel at oral argument that the money was deposited with the clerk of the court. *Ibid.*

eviction, and to require the payment of outstanding late fees to avoid an eviction under *N.J.S.A.* 2A:18–55, the late fees must either constitute "additional rent" or the "accrued costs of the proceedings." In that event, a court may order payment of rent, including any authorized "additional rent," to obtain dismissal of a summary dispossess complaint and avoid eviction. *N.J.S.A.* 2A:18–55; *see also Harris, supra,* 155 *N.J.* at 234, 714 *A.*2d 282 (stating that landlord could recover such charges as "additional rent" in summary dispossess proceeding if "[t]he written lease ... expressly permit[s] a landlord to recover reasonable attorneys' fees and damages"). On the other hand, the force of this type of provision may be limited by rent control ordinances or federal law. *Harris, supra,* 155 *N.J.* at 242, 714 *A.*2d 282.

▮▮▮▮ The Supremacy Clause of the United States Constitution deems federal law "the supreme Law of the Land." *U.S. Const.,* art. VI, cl. 2. To the extent that state law conflicts with federal law, state law is preempted, "'whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *R.F. v. Abbott Labs.,* 162 *N.J.* 596, 618, 745 *A.*2d 1174 (2000) (quoting *Gade v. National Solid Wastes Mgmt. Ass'n,* 505 *U.S.* 88, 98, 112 *S.Ct.* 2374, 2383, 120 *L.Ed.*2d 73, 84 (1992) (citations omitted)).

> Absent explicit pre-emptive language we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of the federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' and conflict preemption, where 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'
>
> [*Id.* at 618, 745 *A.*2d 1174 (quoting *Gade, supra,* 505 *U.S.* at 98, 112 *S.Ct.* at 2383, 120 *L.Ed.*2d at 84) (citations omitted).]

Thus, in respect of conflict preemption, the relevant inquiry is whether state law "'stands as an obstacle to the accomplishment of a federal objective.'" *Ibid.* (quoting *Jones v. Rath Packing Co.,* 430 *U.S.* 519, 526, 97 *S.Ct.* 1305, 1310, 51 *L.Ed.*2d 604, 614 (1977) (citations omitted)).

In making this determination, we "first must consider the purposes of the federal law, and then evaluate the effect of the state law on those purposes." *Franklin Tower One, L.L.C. v. N.M.*, 157 *N.J.* 602, 725 *A.*2d 1104 (1999). This requires an evaluation of " 'the relationship between state and federal laws as they are interpreted and applied, not merely as they are written.' " *R.F., supra,* 162 *N.J.* at 618, 745 *A.*2d 1174 (quoting *Jones, supra,* 430 *U.S.* at 526, 97 *S.Ct.* at 1310, 51 *L.Ed.*2d at 614 (citations omitted)). Once a clear conflict between state and federal law is established, "the importance to the State of its own law is immaterial ... [and] 'the federal law must prevail.' " *Feldman v. Lederle Labs.,* 125 *N.J.* 117, 135, 592 *A.*2d 1176 (1991) (quoting *Free v. Bland,* 369 *U.S.* 663, 666, 82 *S.Ct.* 1089, 1092, 8 *L.Ed.*2d 180, 183 (1962)). "When a federal regulation conflicts with state law, the same preemption rules apply." *R.F., supra,* 162 *N.J.* at 619, 745 *A.*2d 1174 (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 *U.S.* 141, 153–54, 102 *S.Ct.* 3014, 3022–23, 73 *L.Ed.*2d 664, 675 (1982)).

Courts consistently have recognized that federal law and regulations, rather than state law, may govern in the public housing context. *See, e.g., Harris, supra,* 155 *N.J.* at 242, 714 *A.*2d 282 ("[T]he amount due as rent may be limited by a rent control ordinance, or in the case of public or federally-assisted housing, by federal law."); *Housing Auth. and Urban Redevelopment Agency of City of Atlantic City v. Spratley,* 327 *N.J.Super.* 246, 256, 743 *A.*2d 309 (App.Div.1999) ("Interference by the state judiciary with respect to a responsibility conferred upon a federal agency with presumed expertise in its assigned field would be inherently abrasive."); *Housing Auth. of the City of Jersey City v. Thomas,* 318 *N.J.Super.* 191, 195, 723 *A.*2d 119 (App.Div.1999) (acknowledging out-of-state authority that standard for eviction in federally-funded public housing project is matter of federal law); *see also In re Parker,* 269 *B.R.* 522, 533 (D.Vt.2001) (stating that federal law governs amount of rent charged by public housing authorities); *Binghamton Hous. Auth. v. Douglas,* 217 *A.D.*2d 897, 630 *N.Y.S.2d* 144, 145 (N.Y.App.Div.1995) (holding that late fees, utili-

ty fees, and maintenance fees do not constitute rent under federal regulations and thus are not recoverable in summary proceeding); *City of S. San Francisco Hous. Auth. v. Guillory*, 49 *Cal.Rptr.*2d 367, 371 (1995) ("The standard for eviction in a public housing project which receives federal funding is a matter of federal, not state, law."). Since the enactment of the National Housing Act in 1937, the federal government has been the primary source of affordable housing for low-income families. See Cesar E. Torres, *The Housing Crisis Facing Low Income Families*, 29 *Seton Hall L.Rev.* 1498, 1501–02 (1999). To that end, Congress developed a statutory and regulatory scheme defining and limiting rent for low-income tenants in federally-subsidized housing programs. Central to this scheme is the Brooke Amendment, which strictly defines rent based on a tenant's income. 42 *U.S.C.A.* § 1437a(a)(1). According to the Brooke Amendment,

a family shall pay as rent ... the highest of the following amounts, rounded to the nearest dollar:

(A) 30 per centum of the family's monthly adjusted income;

(B) 10 per centum of the family's monthly income; or

(C) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

*[Ibid.]*

In enacting the Brooke Amendment, Congress intended to "enable families of very low incomes to afford rentals with no more than [thirty] percent of their incomes."[2] S.Rep. No. 91–392 (1969), *reprinted in* 1969 *U.S.C.C.A.N.* 1524, 1541; *see also Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 *U.S.* 418, 430, 107 *S.Ct.* 766, 773, 93 *L.Ed.*2d 781, 792 (1987) (recognizing Brooke Amendment's intent that "tenants [ ] be charged as rent no more and no less than thirty percent of their income"); *McGhee v. Housing Auth. of City of Lanett*, 543 *F.Supp.* 607, 608

---

[2] In 1981, Congress changed the maximum percentage of income that could be paid as "rent" from twenty-five percent to thirty percent. *Omnibus Budget Reconciliation Act of 1981*, Pub.L. No. 97–35, § 322, 95 *Stat.* 357, 400 (1981).

(M.D.Ala.1982) (stating that public housing tenants have right to low-cost housing at rental rate set forth by Congress); *cf. Housing Auth. of Town of Morristown v. Little,* 135 *N.J.* 274, 292, 639 *A.*2d 286 (1994) (noting purpose of public housing to provide affordable housing to low-income families).

Codifying the formula for the calculation of Brooke Amendment rent, 42 *U.S.C.A.* § 1437a(b)(5) and its implementing regulations, 24 *C.F.R.* §§ 5.609 and 5.611, define "adjusted income," "annual income," "mandatory exclusions" from income, and "permissive exclusions for public housing." The regulations also set forth procedures for regular and interim reexaminations of a tenant's rent and family composition to determine whether rent should be adjusted. 24 *C.F.R.* §§ 960.257 and 960.259. Numerous other statutory and regulatory provisions limit rent to protect those who suffer hardship. For example, the *Quality Housing and Work Responsibility Act of 1998,* Pub.L. No. 105–276, 112 *Stat.* 2461 (1998) (QHWRA), affords public housing tenants the option of paying either a "flat rent," or the Brooke Amendment income-based rent, whichever is lower. See 24 *C.F.R.* § 960.253. Tenants may choose to switch from a flat rent to an income-based rent at any time due to financial hardship. 42 *U.S.C.A.* § 1437a(a)(2)(B) and (C); 24 *C.F.R.* § 960.253(a) and (f). QHWRA also permits a public housing authority to "establish a minimum rent of up to $50." 42 *U.S.C.A.* 1437a(a)(3); 24 *C.F.R.* § 5.630(a)(2). In the event of financial hardship, such as loss of employment or public assistance, tenants are exempted from paying even the minimum rent and are not subject to eviction. 24 *C.F.R.* § 5.630(b)(1)(i) and (iii). There are also provisions that delay rent increases that would otherwise occur when a tenant obtains employment and receives an increase in income. 24 *C.F.R.* § 960.255(b). Still other provisions provide a "ceiling rent," a protective measure that caps rent at a specified amount regardless of a tenant's income. 24 *C.F.R.* § 960.253(d).

The foregoing regulations not only limit public housing tenant rent, but also draw a sharp distinction between "tenant rent" and

other charges. According to 24 *C.F.R.* § 5.603(b), "tenant rent" is defined as "[t]he amount payable monthly by the family as rent to the [public housing authority]." 24 *C.F.R.* § 966.4(b), entitled "Payments due under the lease," refers only to "tenant rent," 24 *C.F.R.* § 966.4(b)(1), and a limited number of other permissible additional charges, including "PHA charges," such as fees for maintenance and consumption of excess utilities, 24 *C.F.R.* § 966.4(b)(2), and "Late payment penalties," 24 *C.F.R.* § 966.4(b)(3). Conversely, 24 *C.F.R.* § 966.6 enumerates prohibited lease provisions. Among those prohibited are provisions stating that

> the tenant agrees to pay attorney's fees or other legal costs whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the action. Prohibition of this type of provision does not mean that the tenant as a party to a lawsuit may not be obligated to pay attorney's fees or other costs if he [or she] loses the suit.
>
> [24 *C.F.R.* § 966.6(h).]

Likewise, the Department of Housing and Urban Development (HUD) historically has distinguished rent from other charges. *See, e.g., Lease and Grievance Procedures,* 24 *C.F.R.* § 966 (recognizing distinction between rent and other charges); *PHA–Owned or Leased Projects; Maintenance and Operation; Tenant Allowances for Utilities,* 24 *C.F.R.* § 965 (stating that "HUD's practice . . . is to distinguish between rent and other charges.").

Many courts also have recognized the distinction between tenant rent and other charges, refusing to permit additional charges to be treated as rent. For example, in *Miles v. Metropolitan Dade County,* 916 *F.*2d 1528 (11th Cir.1990), *cert. denied,* 502 *U.S.* 898, 112 *S.Ct.* 273, 116 *L.Ed.*2d 225 (1991), the Eleventh Circuit held that a landlord's attempt to evict a tenant for non-payment of attorneys' fees and costs

> does not transform a miscellaneous charge into rent. The [federal] *regulations* explicitly separate tenant charges into two categories—miscellaneous charges not subject to the 30% limitation and rent charges included in the 30% income limits. These explicit *regulations* imply that the *drafters did not intend to give the PHAs* discretion to decide whether a particular charge is 'rent.'
>
> [*Id.* at 1532 n. 4.]

Similarly, in *Parker*, the public housing authority sought attorneys' fees and utility and repair charges as a condition of assumption of a lease by a Chapter 13 debtor-tenant. *Parker, supra,* 269 *B.R.* at 527. In rejecting the public housing authority's argument, the court held that utility and repair charges could not be considered past due rent. *Id.* at 533. The court stated that a public housing authority "may not use the terms of its lease to broaden the definition of rent to include utility or repair charges, or ... attorney's fees." *Ibid.* The court also concluded that, under Vermont law, a public housing authority may not "use this broader definition of rent as a basis for eviction" and that "payment of the utility and repair charges was not a condition necessary to [the tenant's] cure of the rent default prior to assumption of the lease." *Ibid.*

In *Beckham v. New York City Housing Authority,* 592 *F.Supp.* 785 (S.D.N.Y.1984), *rev'd on o.g.,* 755 *F.*2d 1074 (2d Cir.1985), the district court discussed the Brooke Amendment's implementing regulations:

[T]he regulations implementing this statutory scheme prohibit the inclusion of miscellaneous charges and penalties as rent.... For example, charges 'for maintenance and repair beyond normal wear and tear and for consumption of excess utilities,' as well as penalties for late payments under the lease are distinguished by the regulation from charges for rent, itself.

[*Id.* at 792–93 (citations omitted).]

*See also Crochet v. Housing Auth. of City of Tampa,* 37 *F.*3d 607, 612–13 (11th Cir.1994) (holding that utility deposit and arrearages are not rent under Brooke Amendment); *Aujero v. CDA Todco, Inc.,* 756 *F.*2d 1374, 1376 (9th Cir.1985) (holding that meal charge does not constitute rent under federal law); *Hanrahan v. Housing and Redevelopment Auth. of Duluth,* 912 *F.Supp.* 428, 437–38 (D.Minn.1995), *aff'd,* 86 *F.*3d 1159 (8th Cir.1996) (same); *Douglas, supra,* 630 *N.Y.S.*2d at 145 (holding that public housing tenant rent does not include "charges for excess utility consumption or other miscellaneous charges"); *Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp.,* 668 *F.Supp.* 187, 193–94 (S.D.N.Y.1987), *aff'd,* 848 *F.*2d 391 (2d Cir.1988) (stating that mandatory meal charges are not rent under Brooke Amendment).

## III

■■■ Although state law authorizes the Housing Authority to designate certain charges such as attorneys' fees and late charges as "additional rent," we conclude that state law conflicts with the Brooke Amendment's limit on public housing tenant rent, and therefore is preempted by the federal law. Allowing such charges to be considered rent would increase tenant rent beyond the thirty percent limit established by the Brooke Amendment. Thus, federal law preempts state law to the extent that it conflicts with federal law and permits public housing authorities to designate certain extra charges as "additional rent."

Federal law defines tenant rent as "[t]he amount payable monthly by the family as rent to [the public housing authority]." 24 *C.F.R.* § 5.603(b). Although the implementing regulations authorize a public housing authority to assess tenants other charges, 24 *C.F.R.* § 966.4(b)(2) and (3), that does not mean that those additional charges are "rent," and therefore collectible in a summary dispossess proceeding. To the contrary, federal law explicitly distinguishes tenant rent from other charges. By definition, the treatment of tenant rent in federal law precludes any other assessments from being defined as "additional rent."

We note also that 24 *C.F.R.* § 966.6(h) prohibits lease provisions in which the tenant agrees to pay attorneys' fees or other legal costs "whenever the landlord decides to take action against the tenant even though the court determines that the tenant prevails in the action." The regulation also states that "[p]rohibition of this type of provision does not mean that the tenant as a party to a lawsuit may not be obligated to pay attorney's fees or other costs if he [or she] loses the suit." 24 *C.F.R.* § 966.6(h). Notably, however, the regulation does not permit the treatment of attorneys' fees as "additional rent," or allow for lease provisions that require the payment of attorneys' fees as a condition for dismissal of a summary dispossess action. Courts consistently have upheld this limitation. In *Wright,* the United States Supreme Court concluded:

594

The Brooke Amendment could not be clearer: as further amended in 1981, tenants
could be charged as rent no more and no less than 30 percent of their income.
This was a mandatory limitation focusing on the individual family and its income.
The intent to benefit tenants is undeniable.

[*Wright, supra,* 479 *U.S.* at 430, 107 *S.Ct.* at 773–74, 93 *L.Ed.*2d at 792.]

Likewise, in *Douglas,* a case factually similar to this appeal, the public housing authority sought to evict a tenant for non-payment of rent and "added rent," which consisted of late fees, utility fees, and maintenance fees. *Douglas, supra,* 630 *N.Y.S.2d* at 145. The court held that the public housing authority could not "recover these charges through [a summary] proceeding by defining them as 'added rent' in its lease with [the tenant]." *Ibid.* The court reasoned that

[d]espite the clear lease provisions, the property at issue is governed by standards
different from those applicable to private landlord/tenant relations. Pursuant to
the Brooke Amendment, as implemented by the public housing regulations, the
total tenant payment allowable as rent is only that amount designated by the
guidelines therein ... and does not include charges for excess utility consumption
or other miscellaneous charges[.]

[*Ibid.* (quotation omitted).]

*See also Housing Auth. of City of Passaic v. Torres,* 143 *N.J.Super.* 231, 236, 362 *A.*2d 1254 (App.Div.1976) (finding no jurisdiction where rent sought not in compliance with HUD regulations). *Cf. Ivy Hill Park Apartments v. Sidisin,* 258 *N.J.Super.* 19, 23, 609 *A.*2d 54 (App.Div.1992) (finding court lacked jurisdiction in action to evict for nonpayment of rent and other charges as "additional rent" where other charges violated rent control ordinance).

State law, which permits the recovery of "additional rent" in a summary dispossess proceeding, thus conflicts with the Brooke Amendment, which strictly defines tenant rent to exclude such other charges. Allowing summary eviction for nonpayment of "additional rent," such as attorneys' fees, court costs, and late charges, undermines the Amendment's express limitation on tenant rent. Put simply, federal law defines rent as a percentage of a tenant's adjusted monthly income, and expressly distinguishes tenant rent from other charges. The concept of "additional rent" permits other charges unconnected with a tenant's monthly income to be considered part of "tenant rent." Those disparate results cannot be reconciled.

We therefore hold that state law is preempted by federal law. Thus, the additional charges sought by the Housing Authority are not tenant rent due under the lease. Charges that exceed the thirty percent cap may be permissible, if allowed under other provisions, but cannot be considered or treated as rent, and therefore cannot serve as the basis for a summary dispossess action for nonpayment of rent.

The Housing Authority acknowledged at oral argument that it has other avenues of relief available to it, such as initiating an action in the Special Civil Part to collect the other charges. *R.* 6:1-2(a)(2). We recognize that the above may not be the best or even the most efficient of alternatives for the Housing Authority to obtain the fees it is owed. Nevertheless, the Housing Authority retains the option of pursuing an action for attorneys' fees and late charges in a separate proceeding.

## IV

In summary, Congress has mandated that affordable housing be made available to low-income families. To that end, federal law strictly defines and limits the amount of rent that a public housing authority may charge its tenants. We hold that the Housing Authority may not recover attorneys' fees and late charges as additional rent in a summary dispossess proceeding. To the extent that state law permits public housing authorities to designate certain other charges as "additional rent," that state law conflicts with federal law and is therefore preempted. Public housing authorities retain the right to collect these other charges in a separate proceeding.

Reversed.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.