800 A.2d 259 (2002)
352 N.J. Super. 457
EDWARD GRAY APARTMENTS/REGION NINE HOUSING CORPORATION, Plaintiff-Appellant,
v.
Norma WILLIAMS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted May 13, 2002.
Decided July 2, 2002.
*261 Tarella & Liftman, attorneys for appellant (James A. Tarella, North Brunswick, on the brief).
Felipe Chavana, Ex. Director, Essex-Newark Legal Services, Inc., attorney for respondent (Jose L. Ortiz and Nora R. Locke, on the brief).
Before Judges PRESSLER, LANDAU and KIMMELMAN.
*260 The opinion of the court was delivered by LANDAU, J.A.D. (Retired and temporarily assigned on recall.)
Plaintiff Edward Gray Apartments/Region Nine Housing Corporation, appeals from the dismissal of its Special Civil Part complaint for eviction of defendant Norma Williams.
The complaint, filed June 22, 2001, demanded possession in two counts. Count One recited defendant's failure to pay unsubsidized rent of $1,003 per month after she was notified that her monthly subsidy in the amount exceeding $135 per month was terminated in accordance with Section 8(HUD) regulations effective June 1, 2001. Count Two recited defendant's failure to comply with a notice to cease dated April 16, 2001, and notice to quit dated April 26, 2001, effective May 31, 2001.
The matter was tried on stipulated facts, the several termination notices and the lease between the parties. These were deemed legally insufficient to support eviction. We disagree and reverse.
The parties stipulated:
1. Norma Williams commenced a tenancy at Berkeley Terrace Apartments, 5 Berkeley Terrace, Apt. 2B, Irvington, N.J., on or about 1989, and received a Section 8 subsidy.
2. In July 1, 1998, Norma Williams applied for tenancy, and another Section 8 subsidy, at Edward F. Gray Apartments, 712 15th Street, Apt. 1304, Irvington, N.J.
3. Norma Williams commenced tenancy at Edward F. Gray Apartments effective 8/18/98 and began receiving a Section 8 subsidy for that apartment.
4. Norma Williams did not terminate her tenancy at Berkeley Terrace until April 12, 2001.
5. From August 18, 1998 to April 12, 2000, Norma Williams maintained tenancies at Berkeley Terrace and Edward F. Gray Apartments and received subsidies at both locations.
5. [sic] In February 2001, Norma Williams met with the managers of both complexes.

*262 6. In April 12, 2001, Norma Williams terminated her tenancy at Berkeley Terrace Apartments.
7. By letter dated April 28, 2001, Edward F. Gray Apartments purported to terminate the Section 8 subsidy effective June 1, 2001.
8. Edward F. Gray Apartments served notice to terminate tenancy, appended to the complaint, effective May 31, 2001.
9. Norma Williams did not vacate Edward F. Gray Apartments, and remains in occupancy.
10. Norma Williams has not paid the unsubsidized rent, $1003, for June and July 2001 and contends that her rent obligation is $135, her portion of rent if the subsidy continued.
Paragraph 4 of the subject lease provides in pertinent part that:
The Tenant agrees that the amount of rent the Tenant pays and/or the amount of assistance that HUD pays on behalf of the Tenant may be changed during the term of this Agreement if: ... D. changes in the Tenant's rent or assistance payment are required by HUD's re-certification or subsidy termination procedures; ... or F. the Tenant fails to provide information on his/her income, family composition or other factors as required by the landlord.
Paragraph 4 also requires compliance with HUD's handbooks and regulations related to administration of subsidy programs.
Paragraph 13 of the lease provides in pertinent part: "The Tenant must live in the unit and the unit must be the Tenant's only place of residence."
Paragraph 23B. of the lease provides in pertinent part that:
any termination of the agreement by the Landlord must be carried out in accordance with HUD regulations, state and local law, and the terms of this agreement. The Landlord may terminate this agreement ... for: ... the Tenant's material non-compliance with the terms of this agreement.
The term "material non-compliance" with the lease includes, "failure of the Tenant to timely supply all required information on... eligibility factors ... or to knowingly provide incomplete or inaccurate information..."
Paragraph 25 of the lease provides that, "knowingly giving the Landlord false information regarding income or other factors considered in determining Tenant's eligibility and rent is a material non-compliance with the lease subject to termination of tenancy...."
These lease provisions are consistent with the provisions of HUD Handbook 4350.3, entitled Occupancy Requirements of Subsidized Multifamily Housing Programs, Sections 5-17 through 5-21.
Significantly, this portion of the HUD Handbook is preceded by a note explaining that key provisions in Sections 5-19 through 5-21, "were first introduced in the Office of Housings Tip Guide, `Locking Out Tenant Fraud and Errors in Multi-Family Housing Programs,' issued 10/91." The note goes on to explain that, "the material below instructs owners on what corrective courses of actions to take." Section 5-17c. includes the following language "... fraud can be handled civilly by using it as grounds for a termination of tenancy. Providing false information is a material non-compliance with the lease." The section goes on to explain in sub-paragraph d. that the file must show that the tenant was made aware of the program requirements, which can be shown by the intake documents, and that the tenant intentionally misstated or withheld material information. Fraudulent intent, according to the *263 subsection, can be demonstrated by proving that, "the tenant omitted material facts which were known to the tenant" or that "there were admissions to others of the illegal actions or omissions." Section 5-20b. provides that, "When fraud, by legal definition, is present, the authorized course of action for owners to take is termination of tenancy." This statement is supported by a reference to 24 C.F.R. § 247.3 (entitlements of tenants to occupancy). The subsection also states that material non-compliance includes knowingly providing incomplete or inaccurate information.
While agreeing that defendant's conduct constituted fraud, the trial judge concluded that the notices which formed the basis of the complaint for possession were inadequate. One notice clearly referenced defendant's initial misrepresentation of eligibility and cited defendant's continued maintenance of the two subsidized apartments. Another also recited defendant's maintenance of the two subsidized units. The judge concluded, however, notwithstanding his view that the undisputed facts established fraud,[1] that termination of defendant's tenancy should be denied. He reasoned that because defendant gave up one of the tenancies in April 12, two months after a February meeting at which she was confronted with her subsidized tenancy in the two apartments, this rendered the April 26 notice to cease inapplicable, and the notice to quit unenforceable. The judge also concluded that as the notice to quit did not specifically mention "fraud" but only referred to the two tenancies, defendant would be denied due process if plaintiff was awarded a judgment for possession.
We disagree with those conclusions. We note first that the admitted maintenance of two subsidized apartments by defendant was at once both the result and the principal proof that the Edward Gray apartment was fraudulently secured and maintained. This is a material non-compliance justifying the plaintiff's action under both the lease and HUD Handbook provisions above referenced.
As the applicable facts were not disputed, the trial judge's interpretation of the law and the legal consequences flowing from those facts are not entitled to the deference customarily afforded to a hearer's factual determinations. Manalapan Realty L.P. v. Manalapan Township Committee, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
We distill from the facts stipulated and the necessary inferences therefrom that effective August 20, 1998, defendant applied for and secured from plaintiff a second HUD Section 8 subsidized apartment, the unit that is the subject of this appeal, by failing to disclose that she already held a subsidized tenancy.[2] Thus, apart from improperly receiving a second apartment, she also improperly applied for and received a second subsidy. The difference between the market rent of $1,003 for the apartment and its $135 subsidized rent is $868 per month.
During the period between August 1998 and April 12, 2001, when defendant gave up the first apartment after being confronted with the facts, approximately $28,000 in improper subsidy had been induced *264 by her failure to disclose. It is equally apparent that as defendant was the applicant and tenant in both apartments and the recipient of both subsidies, she had to have been aware of the misrepresentation and its consequences.
Significant, in light of the purposes of both the HUD program and the New Jersey Anti-Eviction Act, is the obvious concomitant consequence that defendant's actions removed an apartment from the straitened low income housing market. There was one less apartment available for a deserving family. Defendant's conduct flies squarely in the face of the purpose of the Section 8 program which is to provide decent, safe and sanitary housing for low-income families through the use of a system of housing assistance payments. 24 CFR Section 883. Similarly, as recognized in Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 725 A.2d 1104 (1999), "[t]he purpose of [the Anti-Eviction Act] is to protect residential tenants from the effects of what the Legislature has deemed to be a severe shortage of rental housing in this state." Id. at 614, 725 A.2d 1104 (citing Harden v. Pritzert, 178 N.J.Super. 237, 240, 428 A.2d 927 (App.Div.1981)). The purpose of the Section 8 program is to aid low-income families in obtaining a decent place to live. Id. at 608, 725 A.2d 1104. The overall purpose of our Anti-Eviction Act is to protect blameless tenants from eviction. Chase Manhattan Bank v. Josephson, 135 N.J. 209, 226, 638 A.2d 1301 (1994). (Emphasis provided.)
As the Supreme Court made clear in Housing Authority & Urban Redev. Agency v. Taylor, 171 N.J. 580, 588-89, 796 A.2d 193 (2002), our statutory interpretation should not be inconsistent with effectuation of the federally stated policy. See also Housing Authority & Urban Redev. Agency of City of Atlantic City v. Spratley, 327 N.J.Super. 246, 255, 743 A.2d 309 (App.Div.1999). Neither should construction of the Anti-Eviction Act ignore the "common sense of the situation." Les Gertrude Assoc. v. Walko, 262 N.J.Super. 544, 548, 621 A.2d 522 (App.Div.1993).
We must not so apply literal language of a statute as to lead to conclusions incompatible with the legislative design or which, given the internal sense of the act, create an anomalous, unreasonable, or absurd result. Bradley v. Rapp, 132 N.J.Super. 429, 433, 334 A.2d 61 (App.Div.1975). See also Floral Park Tenants Ass'n. v. Project Holding, Inc., 152 N.J.Super. 582, 378 A.2d 266 (Chan.Div.1977), aff'd, 166 N.J.Super. 354, 399 A.2d 1033 (App.Div.), certif. denied, 81 N.J. 278, 405 A.2d 823 (1979).
The holding below suggests that the plaintiff's notices to cease and to quit were mooted by defendant's relinquishment of one apartment upon her apprehension. Fraud is not the kind of conduct that can be cured or remedied by its mere discontinuance upon discovery. Endorsement of this view would make a mockery of the HUD regulations, and ignore the termination remedy provided for material non-compliance.
We find no inconsistency between the Anti-Eviction Act and the HUD Handbook requirements enforced by the Landlord in this case. We hasten to add that, were there to be an inconsistency, the federal policy must govern in this case, where it is both preemptive and consistent with the policies underlying the Anti-Eviction Act.
Further, we find no persuasive basis for the judge's conclusion that it would be a denial of due process to grant plaintiff's demand for termination on the facts presented. She was advised in February 2001, of the nature of her lease violations and met with Landlord representatives at *265 that time. She received notices, including her right to request a hearing, that referenced the initial misrepresentation and the maintenance of two subsidized apartments. She was served with the complaint in this matter that referenced those notices. She had the advice and assistance of competent counsel. Finally, she has admitted to facts which we find adequate to support, indeed even to require, termination of her lease for material non-compliance. Were further process to be afforded, those facts would not change.
This kind of situation was well described in Board of Educ. of Mountain Lakes v. Maas, 56 N.J.Super. 245, 152 A.2d 394 (App.Div.1959):
It has been said that due process deals with matters of substance and is not to be trivialized by formal objections that have no substantial bearing on the ultimate rights of the parties. Market Street Ry. Co. v. Railroad Comm'n of California, 324 U.S. 548, 562, 65 S.Ct. 770, 89 L.Ed. 1171 (1945). As Judge Clapp observed in Boots `N Saddle v. Newark Municipal Bd., A.B.C., 44 N.J.Super. 38, 41, 129 A.2d 583 (App. Div.1957), "The magnificent concept of due process would seem to have acquired a most perverse function if it could be made use of in order to reverse a case where substantial justice has plainly been rendered." Defendant had ample opportunity to be heard, and her contentions were fully aired. Her argument reduces itself to a procedural nicety, and we find it without merit.
[Id. at 257-58, 152 A.2d 394, aff'd, 31 N.J. 537, 158 A.2d 330, cert. denied, 363 U.S. 843, 80 S.Ct. 1613, 4 L.Ed.2d 1727 (1960).]
In light of the foregoing analysis, the judgment under review is reversed. Judgment for possession is entered for plaintiff and against defendant on the second count of the complaint. R. 2:11-3(b).
Respecting the First Count, which is based upon the defendant's failure to pay her unsubsidized rental of $1,003 following termination of her rent subsidy, the judge found no authority for termination of subsidy and so dismissed the count based on non-payment of rent. Our judgment entered on Second Count renders unnecessary an extensive discussion of this issue. However, we do read Paragraph 4 of the lease quoted supra at page 3 to provide authority for termination of subsidy and, consequently, for a judgment of possession based upon failure to pay the unsubsidized monthly rental.
Reversed. Judgment for possession is granted to plaintiff.
NOTES
[1] We agree with this assessment. See, e.g., United Jersey Bank v. Kensey, 306 N.J.Super. 540, 550-551, 704 A.2d 38 (App.Div.1997) certif. denied, 153 N.J. 402, 709 A.2d 795 (1998).
[2] This opinion treats only with the plaintiff Edward Gray Apartments property. We express no view respecting the possible result had defendant retained the Berkeley Terrace apartment and surrendered the Edward Gray unit.