**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5689-18T1

WESTFIELD SENIOR
CITIZENS HOUSING CORP.,

    Plaintiff-Respondent,

v.

PATRICIA LYTELL,

    Defendant-Appellant.

_____

Submitted September 15, 2020 – Decided September 28, 2020

Before Judges Yannotti, Mawla, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. LT-002242-19.

Community Health Law Project, attorneys for appellant (Meena J. Song and Sean M. Benoit, of counsel and on the briefs).

Manfredi & Pellechio, attorneys for respondent (Melissa Pellechio, of counsel and on the brief; Daryl J. Howard, on the brief).

PER CURIAM

Defendant Patricia Lytell appeals from a June 11, 2019 judgment of possession in favor of plaintiff Westfield Senior Citizens Housing Corporation and an August 7, 2019 order denying reconsideration. We affirm.

Plaintiff is a federally subsidized, non-profit corporation that provides 172 units of affordable housing to low-income senior and disabled tenants. Its receipt of Department of Housing and Urban Development (HUD) funding is conditioned on compliance with HUD regulations, which include housing units satisfying certain physical condition standards. Plaintiff must also use a HUD model lease for all tenant units, which contain provisions requiring tenants to maintain units in a clean and orderly fashion.

Defendant has lived in plaintiff's complex for over fifteen years under the terms of a HUD model lease and plaintiff's rules and regulations. Her tenancy was marked by a history of failing to maintain her unit in compliance with these standards due to hoarding. Plaintiff filed an eviction action in 2011 on the same grounds as the instant matter. The parties settled, requiring defendant to clean the unit, and maintain its cleanliness for a twelve-month monitoring period. However, afterwards, defendant's unit failed inspections, causing plaintiff to give her more time to bring the unit into compliance, including offering defendant housekeeping services and referrals to social services.

A-5689-18T1

Notwithstanding plaintiff's efforts, the condition of defendant's unit worsened over time, failing to meet health, safety, and fire hazard standards, which created a danger to herself and other residents. Plaintiff alleged defendant refused to cooperate with its demands to clean the apartment. In November 2017, plaintiff served a notice to cease on defendant, citing substantial violations of her lease agreement and applicable rules and regulations. In December 2018, plaintiff served a notice of termination of lease, a notice to quit, and a demand for possession on defendant.

In January 2019, plaintiff and defendant discussed the lease termination and the condition of the unit, and plaintiff agreed if defendant cleaned her apartment, she could contact the management office to schedule an inspection. Plaintiff made the building's housekeepers available to assist defendant with cleaning her unit going forward.

Defendant's lease terminated in February 2019, and plaintiff filed an eviction complaint in March, alleging substantial violations of the lease, N.J.S.A. 2A:18-61.1(e)(1), and plaintiff's rules and regulations, N.J.S.A. 2A:18-61.1(d), due to defendant's failure to maintain the residence in a clean, safe, and sanitary condition. In defense, defendant asserted she suffered from hoarding disorder and plaintiff failed to provide a reasonable accommodation for her

disability. Defendant filed a certification, along with a supporting certification of a social worker. In response, plaintiff filed affidavits from its executive director and its facilities director arguing it accommodated defendant over the past fifteen years without success. Plaintiff noted a November 2018 inspection revealed widespread issues in the unit, including large piles of clutter, which left virtually no room to walk, and items piled on top of the stove and blocking window access. Plaintiff also submitted evidence that: (1) defendant's unit failed many inspections; (2) the New Jersey Department of Community Affairs (DCA) cited and fined plaintiff for the unit's condition; and (3) defendant declined services and referrals to social services offered by plaintiff.

In April 2019, the trial judge heard arguments regarding the reasonable accommodation issue and adjourned his decision to the following month, ordering defendant to clean her apartment in the interim. When the matter resumed on May 7, 2019, the judge concluded defendant received a reasonable accommodation for her alleged disability, namely, the time between the 2011 settlement and 2019, to remedy the conditions in her apartment. He reasoned plaintiff could neither provide nor mandate mental health services for defendant's condition, and nothing required it to provide an unlimited amount of time for defendant to avail herself of treatment. The judge concluded, even if

4

he granted defendant additional time to receive services, at any point she could cease treatment and the parties would be "back in the same position again." He found plaintiff was entitled to finality because it was "under pressure from . . . Westfield Fire Department, the [DCA], [and] other state agencies, due to the condition of the apartment and the building as a result thereof. They're being fine[d]. Threat[s] of fines." Notably, as of the May 7, 2019 hearing, defendant was only "half-way through" cleaning her unit.

On May 21, 2019, the parties returned for trial and defendant moved to dismiss the complaint on grounds she cured the cause for eviction. Following arguments, the judge denied the motion, concluding the issue was a factual dispute for trial. The judge directed the parties to return on May 29, 2019, for trial. The same day, DCA inspected the unit and found that it satisfied applicable safety and fire code requirements.

During the two-day trial, plaintiff presented testimony of its executive director regarding the DCA fines it received, and the social services information and referral services it provided to defendant. Plaintiff's facility director testified regarding his photographs of defendant's apartment, which showed it was "cluttered completely" and unsafe. He stated he inspected defendant's apartment on May 7 and May 21, 2019, and it failed both times. Although he

5

acknowledged some cleaning occurred, clutter still impeded access to windows, doors, and the fire door, and he could not inspect the electrical outlets and windows because they were also blocked. He further noted the bathroom contained electrical fire hazards, including "a plastic bag and clothes . . . [near an] electrical heater . . . ."

Defendant called the social worker to testify regarding his observations of the apartment's condition on May 28, 2019. He stated nothing blocked the entrance to the unit and that he could walk throughout the apartment and access the kitchen, bedroom, and living room. He testified the kitchen floor was "free and clear" and the stove was free of objects.

The trial judge entered a judgment for possession. He noted the DCA fined plaintiff because of the unit's condition. Relying on plaintiff's photographs, the judge found the cluttered conditions and safety violations in the unit remained unaddressed and failed to meet the lease standards, and plaintiff's rules and regulations. He found, notwithstanding the "substantial amount of work done," merely cleaning the leased premises at the last possible moment did not amount to a cure of the causes for eviction.

Following the decision, defendant learned the DCA issued a report showing her rental unit passed inspection on May 21, 2019, prior to entry of the

judgment of possession, and deemed her unit compliant with the Hotel and Multiple Dwellings Law, N.J.S.A. 55:13A-1 to -28. She moved for reconsideration.

The trial judge denied the motion on August 7, 2019. The judge found no basis for reconsideration because the DCA report did not demonstrate his decision rested on an incorrect basis or failed to consider the substantial evidence presented during the trial. He concluded the report was not dispositive because: (1) it predated defendant's photographs of the unit, which the judge relied upon, along with photographs supplied by plaintiff, to make his determination; (2) plaintiff and the DCA used different criteria to evaluate the unit; and (3) even if the unit was fully cleaned, the DCA report negated neither the findings that it was cluttered and violated safety codes, nor plaintiff's "long history" of failed attempts to rectify the problems with defendant.

## I.

"[I]n reviewing the findings and conclusions of a trial court following a bench trial," we must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (citation omitted). We "should not disturb the factual findings and legal conclusions of the trial

judge unless convinced that those findings and conclusions were so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (citation and internal quotation marks omitted). If we "conclude[] there is satisfactory evidentiary support for the trial court's findings, [our] task is complete and [we] should not disturb the result, even though [we have] the feeling [we] might have reached a different conclusion were [we] the trial tribunal." Llewelyn v. Shewchuk, 440 N.J. Super. 207, 213-14 (App. Div. 2015) (citation and internal quotation marks omitted).

"Reconsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). "[A] litigant must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." Ibid. We review the denial of a motion for reconsideration for an abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

## A.

Defendant argues the trial judge failed to allow her to present and cross-examine witnesses on the reasonable accommodation issue and did not make

adequate findings whether she received a reasonable accommodation under the Fair Housing Act (FHA), 42 U.S.C. § 3604(f)(3)(B). Defendant asserts the factual disputes regarding whether she had a mental health disorder and previously requested an accommodation required a hearing. She contends the court should have permitted her counselor to describe her disability, explain its relation to the conditions in her apartment, and the likelihood continued treatment and monitoring through social services would resolve her disability. Defendant asserts the judge should have permitted her to testify regarding her knowledge of the disorder, why she failed to receive treatment sooner, and the present state of her unit.

The FHA prohibits a landlord from discriminating against a tenant in a protected category. 42 U.S.C. § 3604(b). The Fair Housing Amendments Act amended the FHA to include protection for individuals with a disability. 42 U.S.C. § 3604(f)(1)(A). Discrimination under the FHA includes a landlord's denial of a tenant's request for a reasonable accommodation when such an accommodation is necessary to afford the tenant the ability to use and enjoy the rental unit equal to that of any other tenant. 42 U.S.C. § 3604(f)(3)(B); U.S. v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416 (9th Cir. 1994).

Under the FHA, the reasonable accommodation defense is only available if: (1) the tenant suffers from a disability; (2) the landlord knew, or should have known, of the disability; (3) an accommodation of the disability is needed to give the tenant an equal opportunity to use and enjoyment of the apartment; (4) the tenant requests a reasonable accommodation; and (5) the landlord refused to grant it. Douglas v. Kriegsfeld Corp., 884 A.2d 1109, 1129 (D.C. Cir. 2005); Giebeler v. M&B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003).

"A 'reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the [landlord]) and benefit (to the [tenant]) merit consideration as well.' The requested accommodation must 'enhance a disabled [tenant]'s quality of life by ameliorating the effects of the disability.'" Oras v. Hous. Auth. of City of Bayonne, 373 N.J. Super. 302, 315 (App. Div. 2004) (quoting Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995)).

The crux of this appeal concerns the third and fifth prongs of the Douglas factors regarding the nature of the accommodation and whether plaintiff was required to provide it in the manner defendant sought. We agree with the trial judge's finding that defendant requested the reasonable accommodation and defendant's hoarding disorder constituted a disability, which plaintiff was aware

of, as evidenced by its prior efforts to address the condition of the apartment and the 2011 settlement between the parties.

Regarding the third Douglas factor, however, we reject defendant's argument the trial judge erroneously conducted only a cursory evaluation of her reasonable accommodation request and plaintiff's response thereto. Generally, once a tenant proposes a viable reasonable accommodation, the burden shifts to the landlord to obtain further information and determine the feasibility of the requested accommodation. See Douglas, 884 A.2d at 1122. "[T]he landlord [need not] actually 'attempt,' i.e., carry out, a requested accommodation if patently unreasonable." Id. at 1125.

"Rather, . . . the landlord must attempt accommodation at least by opening a dialogue with the tenant on the requested accommodation and thus explore accommodation in good faith before saying 'no.'" Ibid. In doing so, the landlord must make a reasonable effort at an accommodation to remove any threat to the health, safety, and property of others. However, "[t]here may be situations in which no reasonable fact-finder could find that the accommodation requested was reasonable or, in any event, could protect the health, safety, or property of others." Ibid.

An accommodation is not "reasonable" and will not be required, if it would "impose[ ] undue financial and administrative burdens" on the landlord or would fundamentally alter the nature of the landlord's operation. Oxford House, Inc. v. Twp. of Cherry Hill, 799 F. Supp. 450, 461 (D.N.J. 1992) (quoting Se. Cmty. Coll. v. Davis, 442 U.S. 397, 412 (1979)). Reasonable accommodation is not required when the tenancy would pose a "direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9).

Here, the judge correctly concluded defendant failed to demonstrate how the requested reasonable accommodation—mental health services and treatment—was necessary to provide defendant an equal opportunity to use and enjoy her unit. As the judge noted, it was beyond plaintiff's role as a landlord to provide or compel mental health services to address defendant's disability and the condition of her apartment.

Plaintiff employed social workers who provided information and referrals regarding mental health treatment, but it need not provide treatment or mental health monitoring services. Furthermore, the record shows defendant rejected plaintiff's outreach efforts and light housekeeping services. Regarding defendant's promise to receive treatment, the judge found it did not "provide any

assurance that the matter will be resolved because the services have always been available.  Really[,] in the case of mental health issues, it's up to the tenant to go and obtain the services."

Pursuant to the fifth <u>Douglas</u> factor, we find no evidence plaintiff refused to accommodate defendant.  The only evidence of a refusal was plaintiff's denial of indefinite additional time to clean defendant's apartment.  However, defendant had several years from the 2011 settlement to remedy the problem.  Under the circumstances of this case, granting defendant more time would negatively affect other tenants' rights and safety.  <u>Oxford House</u>, 799 F. Supp. at 462.  Indeed, plaintiff adduced evidence that the condition of defendant's apartment and its effects on the building subjected it to inspections from the fire department, the DCA, and other government agencies and a $1000 fine and $79 fee from DCA.

B.

Defendant argues she should have been permitted to cure the lease and rule violations pursuant to N.J.S.A. 2A:18-61.1(d) to (e).  She asserts the trial judge should have considered alternatives to eviction, especially after acknowledging a "substantial cleaning" of defendant's rental unit.  She argues the judge erroneously disregarded the DCA's report as "a snapshot in time" and

relied on criticisms of the condition of her unit contained in the report, which were not cited as violations. She asserts the report, testimony from the social worker stating the unit "was clean, completely decluttered, [and] easy to walk through," and photos of her rental unit contradicted the judge's findings.

A tenant in a federally subsidized rental unit may avoid eviction by curing violations of the landlord's rules and regulations or lease terms beforehand. N.J.S.A. 2A:18-61.1 to -61.12. In certain circumstances, tenants can cure the violations even after termination of the lease. Muros v. Morales, 268 N.J. Super. 590, 594-95 (App. Div. 1993). In considering a cure defense, a trial court must balance the landlord's efforts in responding to the lease violation with the tenant's need for affordable housing; a highly fact-sensitive analysis. See Hous. & Redev. Auth. v. Mayo, 390 N.J. Super. 425, 433-34 (App. Div. 2007). The court may consider "'that the landlord has gone to trouble and expense to prosecute the action.'" Id. at 431 (quoting Muros, 268 N.J. Super. at 595-96).

Defendant raised arguments relating to her efforts to cure in her motion for reconsideration. As previously stated, the judge concluded the DCA report was not controlling because (1) the report predated defendant's photographs of the unit the judge relied upon to make the initial determination; (2) plaintiff and the DCA used different criteria to evaluate the unit; (3) the report did not negate

the clutter and safety violations; and (4) even if the unit was fully cleaned, it would not amount to a cure based upon the facts and governing case law.

We discern no abuse of discretion by the trial judge. Substantial, credible evidence supported the conclusion that defendant did not cure the hazardous conditions in her unit. A brief period of compliance demonstrated by the DCA report and testimony from the social worker did not outweigh defendant's long history of noncompliance, the recurrent nature of her violations, and plaintiff's inability to mandate mental health treatment for defendant's hoarding disorder. Moreover, the DCA's standards differ from the federal regulations relating to the housing unit's condition. Compare N.J.A.C. 5:10-8.2(b) ("Floors, walls, ceilings, and other exposed surfaces shall be kept clean, free from visible foreign matter, sanitary and well-maintained at all times.") with 24 C.F.R. 5.703(f) ("All areas and components of the housing must be free of health and safety hazards. . . . The housing must have no evidence . . . of garbage and debris."). The DCA does not inspect for safety violations per federal regulations or for compliance with the landlord's standards. The record supports the decision to deny the motion for reconsideration.

## C.

Finally, defendant argues we should reverse for public policy reasons because she cannot afford to pay full market rent, and other subsidized housing is not readily available.  She argues Housing Authority of Morristown v. Little, 135 N.J. 274 (1994), and Community Realty Management, Inc. v. Harris, 155 N.J. 212 (1998), warrant relief from the judgment of possession pursuant to Rule 4:50-1.

Plaintiff afforded defendant over one year between the issuance of the notice to cease and the notice of termination of lease to remedy the concerns with her unit.  Plaintiff did not file the eviction complaint until nearly two months after its representatives met with defendant to attempt to remedy the condition of her apartment and over two months after receipt of the notice of termination of the lease.  The trial occurred nearly three months later, and only then did defendant attempt to cure the violations.  The equities do not favor defendant's public policy argument.

Moreover, Little and Harris are factually distinguishable as non-payment of rent cases.  The issues in this case are more complex.  More importantly, defendant made no motion for relief from the judgment in the trial court as occurred in those cases.  For these reasons, we decline to consider arguments

not properly raised before the trial judge.  <u>Nieder v. Royal Indem. Ins. Co., Inc.</u>, 62 N.J. 229, 234 (1973).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5689-18T1